DAUGHERTY et al. v. BOGY.

(Circuit Court of Appeals, Eighth Circuit. October 24, 1900.)

No. 1,369.

1. APPEAL—REVIEW—QUESTIONS OF FACT.
A finding by the court in an equity case that a note and mortgage were fraudulent in fact because executed with intent to hinder and delay the other creditors of the mortgagor will not be disturbed on appeal, where the evidence is conflicting, unless some serious or important mistake has been made in its consideration.

2. FRAUDULENT CONVEYANCES—EXEMPT PROPERTY—IMPROVEMENTS ON INDIAN LANDS.
Under Act May 2, 1890 (1 Supp. Rev. St. [2d Ed.] p. 734, c. 182), which exempts improvements on Indian lands, unless made by persons or companies operating mines, railroads, or other industries, from attachments or from sale on execution except on the judgment of an Indian court, and permits their sale in supplemental proceedings only when owned by adopted citizens of a tribe or a resident who is not a citizen, a creditor of a citizen of an Indian tribe by blood cannot attack as fraudulent a conveyance by his debtor of improvements on agricultural lands, since, in a legal sense, he has no interest in the property.

3. SET-OFF—RIGHT TO PLEAD—EQUITABLE GARNISHMENT.
A defendant in a suit by a judgment creditor in the nature of an equitable garnishment, who is sought to be charged as a debtor of the judgment defendant, may make any defense which would be available against his creditor, including that of offset; and, since the plaintiff has no rights beyond those of his own debtor, he cannot compel the defendant to resort to a mortgage to secure payment of a note of the judgment defendant which he has pleaded as an offset.

Appeal from the United States Court of Appeals in the Indian Territory.

On March 19, 1897, Alexander M. Bogy filed a bill of complaint against L. C. Perryman, George B. Perryman, and J. M. Daugherty, the appellants, which contained substantially the following allegations: That he (Bogy) on December 4, 1893, had recovered a judgment against L. C. Perryman and George B. Perryman, the defendants, for $6,127, in the United States court in the Indian Territory, which was still unpaid, an execution having been issued and returned nulla bona; that the defendants have from time to time, and then had, large numbers of cattle and horses in their possession, which belonged to them, but upon which they were in the habit of executing mortgages to other persons immediately upon the arrival of such stock in the Indian Territory, so that under the law of the territory the complainant was unable to levy execution upon the property; that said defendants were also the owners or possessors of large tracts of pasture land in the territory, which was inclosed by wire fences, and from which they derived a revenue to the extent of $20,000 per annum, and on account of which they had been receiving such sum annually for many years: that the defendant J. M. Daugherty was the agent or lessee of the Perrymans with reference to said pasture land, and that by

and through him they had been enabled to collect said sum of $20,000 per year, and to appropriate the same to their own use, in disregard of the rights of the complainant; and that the said Daugherty was at the time of the filing of the complaint indebted to his co-defendants in a large sum of money, growing out of his relations to them and their ownership of the aforesaid pasture lands. Afterwards, on December 14, 1897, the complainant filed an amendment to his bill, wherein he charged, in substance, that Daugherty had conspired with the Perrymans with intent to cheat, hinder, and delay the creditors of the latter, and that as a part of said scheme they had executed in favor of Daugherty mortgages or bills of sale upon all the property of the Perrymans, including farms, pastures, goods, and chattels; and that said Daugherty had during the past three or four years paid to his co-defendants more than $50,000, while their creditors were hindered and delayed in the collection of their debts. On May 21, 1897, the Perrymans filed an answer to the bill, which had not at that time been amended, the answer being, in substance, a general denial of all of the allegations therein contained. On May 29, 1897, before Daugherty was served with process or had answered the bill, a receiver of all the property of the Perrymans was appointed at the instance of the complainant. By said order the receiver was authorized and directed to take charge of and hold any and all interests which the Perrymans, or either of them, had in any large border pasture or pastures in the Creek Nation. On May 27, 1897, an order was made appointing a master in chancery to take such testimony as might be produced before him, and to make a report thereon at the earliest time practicable. During the pendency of the case before the master, and on November 5, 1897, the defendant Daugherty filed his answer to the bill of complaint, which was to the following effect: He denied that he was or had been the agent of the Perrymans, as charged, with respect to the pasture land, or that by and through him the Perrymans had been enabled to collect money from persons who were using said pastures, and he denied that he was at the time of the service of process upon him indebted to the Perrymans in any sum whatever. He further averred the fact to be that he had a contract with George B. Perryman for the use, for grazing and other purposes, of certain border pastures belonging to Perryman which were situated in the Creek Nation, for which he had obligated himself to pay said Perryman the sum of $14,500 per year; that prior to the service of process upon him, and even before the institution of the suit, he had paid the rent due under said contract for the year 1897 and prior years, and that his contract for the use of the pastures would expire with the year 1898. He further alleged that George B. Perryman was indebted to him in the sum of $20,000, to secure the payment of which the said Perryman had theretofore executed in his favor a chattel mortgage, which was wholly unpaid, with the exception of a few payments made on account of interest; that the said Perryman had been induced to execute the aforesaid contract with reference to the pasture lands and the aforesaid chattel mortgage by a promise on his part that he would advance to Perryman the rent which would accrue for the use of said pasture lands, and would not apply the same on his mortgage, and that he had in fact advanced money in this wise, almost all of which was paid directly to various creditors of Perryman, and among them to the complainant; that the rent of said pasture land for the ensuing year, 1898, was to be applied, however, upon the indebtedness of $20,000, secured by the chattel mortgage aforesaid, which Perryman then owed; that the property covered by said chattel mortgage was insufficient to pay the mortgage debt, or any considerable portion thereof, and that he held no property in which the Perrymans had any interest, except as last stated; and that he was not indebted to either of the Perrymans in any sum whatever, but that, on the contrary, George B. Perryman was indebted to him in the sum of $20,000. The master subsequently filed a report, to which certain exceptions were taken. After passing upon the exceptions, some of which were sustained and some overruled, the trial court entered the following decree, in substance: That the complainant was entitled to receive from the receiver theretofore appointed an amount of money sufficient to pay off his judgment and interest according to the tenor and effect thereof; that the receiver be ordered and directed to take charge immediately of all of the property covered by the chattel mort-

gage executed by George B. Perryman in favor of the defendant Daugherty, and to apply the proceeds of the leases on the pastures to the payment of the complainant's judgment on which the bill was founded, according to its tenor and effect. The court of appeals in the Indian Territory on appeal (53 S. W. 542) modified this decree by directing the receiver to collect the rent of the pasture lands for the year 1898 which Daugherty was obligated to pay, and apply the money so collected to the discharge of the complainant's judgment. The defendants below excepted to the decree and the modification thereof, and the present appeal brings it before this court for review.

Edgar Smith and F. B. Kellogg (William M. Mellette, Cushman K. Davis, and C. A. Severance, on the brief), for appellants.

J. P. McCammon (George E. Nelson, on the brief), for appellee.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The evidence contained in the present record tends to show and does show the following facts: George B. Perryman and L. C. Perryman are citizens of the Creek Nation by blood. From and after the year 1890, George B. Perryman held extensive tracts of pasture lands in the Creek Nation, called "border pastures," which he had lawfully acquired from the Creek Nation, and had fenced, and for which he paid to the nation a royalty of five cents per acre. During the years 1890, 1891, 1892, 1893, and 1894, J. M. Daugherty, who resided at Abilene, Tex., and was an extensive cattle raiser and a dealer in cattle, rented portions of Perryman's pasture land in the Creek Nation, for which he paid rent. He had many other transactions with Perryman during those years, in the course of which the latter became justly indebted to him in the sum of at least $20,000. On February 17, 1894, Perryman executed his note in favor of Daugherty, due in one year, and to secure the same also executed a mortgage, which covered the bulk of the mortgagor's property in the Creek Nation. This mortgage included improvements on the pastures of the mortgagor, houses, outbuildings, and barns which he owned in Tulsa, Ind. T., farms in and around Tulsa, one large farm in the Arkansas river bottom, and a large amount of live stock. Contemporaneously with the execution of the mortgage an agreement was entered into between Daugherty and Perryman whereby the former secured the right to occupy and use all of Perryman's border pastures in the Indian Territory, which embraced many thousand acres, for a rental of $14,500 per annum, the agreement being that Daugherty should pay the rent for these pastures directly to Perryman, or as he might direct, and that Daugherty should not apply the rent on the mortgage indebtedness aforesaid. This arrangement continued without interruption until this action was commenced in May, 1897, at which time, by the agreement then in force, Daugherty was entitled to the use of the pastures until April 1, 1899. On January 24, 1896, Perryman executed another note for $20,000, at one year, in renewal of his former note, and another mortgage, which embraced the property covered by the prior mortgage and some additional property. No part of this note had been paid when the present action was instituted, but it remained

a valid and subsisting indebtedness. After the agreement aforesaid, none of the rental money for the pasture lands was applied by Daugherty to the payment of the mortgage indebtedness, but the same was paid by Daugherty to the Creek Nation on account of the royalty which Perryman was under an obligation to pay, or it was paid directly to Perryman, or to such of his creditors as he indicated. The agreement to thus pay the rent was the inducement which led Perryman to execute the aforesaid mortgage. When this action was brought, the rent to accrue from the lease of the pastures for the season of 1898, which was to terminate April 1, 1899, was unpaid. Daugherty used the pastures subsequent to 1895 to pasture his own herds as well as the cattle of other persons, and he realized by such use a profit of about $10,000 per year over and above the amount of the rental which he himself paid to Perryman or to Perryman's creditors. Within one year after the mortgage of February 17, 1894, was executed, Daugherty paid debts of Perryman, either with money or by giving his own notes, which amounted to about $25,000. He intended to apply the rent for the year 1898—the same being the last year of his term—to the extinguishment of the aforesaid mortgage indebtedness. The master before whom the testimony in this case was taken, the trial court, and the court of appeals in the Indian Territory all agreed in the conclusion that the arrangement existing between Perryman and Daugherty which comprehended the making of the mortgage and the contract for the use of the border pastures was fraudulent as to Perryman's creditors. The decree below was the result of that conclusion. The only difference of opinion on this issue seems to have been that, while the trial and the appellate courts believed the arrangement to be fraudulent in fact, the master was of opinion that the evidence was insufficient to warrant him in finding that it was concocted in pursuance of an actual intent to hinder and delay Perryman's creditors. He held, however, in substance, that the necessary result of the arrangement was to hinder Perryman's creditors, and in this respect his conclusion was approved by the court of appeals.

In view of the character of the agreement that was entered into between Perryman and Daugherty, and in view of the facts and circumstances which the record discloses, we are not prepared to overrule the finding of the trial court, concurred in by the court of appeals, that the arrangement was fraudulent in fact, in that it was entered into for the purpose of hindering and delaying Perryman's creditors in the collection of their debts. The mortgage seems to have covered all of Perryman's personal property which was vendible on execution for a sum considerably in excess of its value, and, that being so, the express agreement between the parties that Daugherty should not apply any of the rent of the pastures to the extinguishment of the mortgage, but allow it to stand indefinitely, and that he should pay the rent directly to Perryman or as he might direct, excites a grave suspicion that Perryman intended to hold his creditors at bay, and that Daugherty participated in that intent. Possibly, the arrangement was fraudulent in law without reference to the actual motives of the parties thereto, but it is unnecessary to

express a definite opinion upon that point. The finding of the lower court concerning the fraudulent character of the contract and mortgage must be allowed to stand in obedience to the rule which has been so frequently announced by this and other courts, that the finding of a master or chancellor upon an issue of fact, where the evidence is conflicting, will not be disturbed unless an obvious error has intervened in the application of the law, or unless some serious or important mistake has been made in the consideration of the evidence. Warren v. Burt, 12 U. S. App. 591, 7 C. C. A. 105, 58 Fed. 101; Paxson v. Brown, 27 U. S. App. 49, 10 C. C. A. 135, 61 Fed. 874; Snider v. Dobson, 40 U. S. App. 111, 21 C. C. A. 76, 74 Fed. 757; Tilghman v. Proctor, 125 U. S. 136, 8 Sup. Ct. 894, 31 L. Ed. 664.

It does not follow, however, as a result of the conclusion last announced, that the decree below in its present form can be sustained. That decree, as it was modified by the court of appeals in the Indian Territory, commands Daugherty to pay over to the receiver the sum of $11,000, with interest at 6 per cent. per annum from October 26, 1899, out of the sum due to Perryman as rental for the border pastures for the year 1898; the same to be appropriated to the payment of the complainant's judgment, and the residue, if any, to be paid to George B. Perryman. In other words, the lower court deemed it competent to seize the rent due for the year 1898 on account of the pastures, and to apply the same on the complainant's judgment, notwithstanding the fact that Perryman was justly indebted to Daugherty to the amount of $20,000, which sum was then due and payable. The question arises whether these rentals could be so seized and applied, even if it be true that the contract for the use of the border pastures and the mortgage were contrived by the parties thereto for the purpose of hindering and delaying Perryman's creditors. And this question must be considered in the light of an act of congress approved May 2, 1890 (1 Supp. Rev. St. [2d Ed.] p. 734, c. 182), which contains the following provisions:

"No attachment shall issue against improvements on real estate while the title to the land is vested in any Indian nation, except where such improvements have been made by persons, companies, or corporations operating coal or other mines, railroads, or other industries, under lease or permission of law of an Indian national council, or charter, or law of the United States.

"That executions upon judgments obtained in any other than Indian courts shall not be valid for the sale or conveyance of title to improvements, made upon lands owned by an Indian nation, except in the cases wherein attachments are provided for.

"Upon a return of nulla bona, upon an execution upon any judgment against an adopted citizen of any Indian tribe, or against any person residing in the Indian country and not a citizen thereof, if the judgment debtor shall be the owner of any improvements upon real estate within the Indian Territory in excess of one hundred and sixty acres occupied as a homestead, such improvements may be subjected to the payment of such judgment by a decree of the court in which such judgment was rendered. Proceedings to subject such property to the payment of judgments may be by petition, of which the judgment debtor shall have notice as in the original suit. If on the hearing the court shall be satisfied from the evidence that the judgment debtor is the owner of the improvements on real estate, subject to the payment of said judgment, the court may order the same sold, and the proceeds, or so much thereof as may be necessary to satisfy said judgment and costs, applied to the

payment of said judgment; or if the improvement is of sufficient rental value to discharge the judgment within a reasonable time the court may appoint a receiver, who shall take charge of such property and apply the rental receipts thereof to the payment of such judgment, under such regulations as the court may prescribe. If under such proceeding any improvement is sold only citizens of the tribe in which said property is situate may become the purchaser thereof."

The prohibition contained in this statute against attaching improvements on Indian lands other than such improvements as may have been made by persons or corporations owning mines, railroads, and other industries, under lease from an Indian national council or by virtue of a charter or a federal statute, and the general provision therein contained that executions on judgments obtained in any other than the Indian courts shall not be valid to sell improvements on Indian lands, places such improvements beyond the reach of judicial process for the collection of debts, except such process as is issued on judgments obtained in the Indian courts. The only exception to the general prohibition against seizing improvements on Indian lands which is contained in the statute is found in that clause which permits improvements on Indian lands "in excess of 160 acres occupied as a homestead" to be sold when they belong to adopted citizens, or to persons residing in the territory who are not citizens. The right so conferred to levy upon improvements belonging to adopted citizens and to residents of the territory who are not citizens plainly implies that all improvements belonging to a member of an Indian tribe by blood shall be exempt from seizure and sale without reference to the amount or value of such improvements. The court of appeals in the Indian Territory reached this conclusion in the case at bar; also in the case of Mays v. Frieberg, 49 S. W. 52, and with the views expressed in that case as to the object and effect of the statute we fully concur. Perryman's border pastures, which were leased to Daugherty, as well as his farms and buildings in the Creek Nation which were mortgaged to Daugherty, were improvements on Indian lands, and, being property of that nature, no part thereof could have been seized by the complainant below under an execution or attachment, and subjected to the payment of his claim, even if the lease and the mortgage had not been executed. It follows, therefore, that Perryman's creditors cannot challenge the validity of the lease of the border pastures, nor the validity of the mortgage in so far as it conveyed property which was at the time exempt from execution, since a creditor is only entitled to complain of a conveyance of property by his debtor, even if it be voluntary, when the property alienated is of that kind which the creditor is authorized to seize and subject to the payment of his claim. If a creditor is powerless to seize certain property of his debtor, either by virtue of an execution or an attachment, while it is owned by his debtor, this disability is not removed by the transfer of the property to a third party; nor can such transfer be successfully assailed by the creditor, although in making the transfer the debtor may have been actuated by a bad motive. In a legal sense, a creditor has no interest in the property of his debtor that is exempt from seizure and sale either under an execution or an attachment, and for that reason the

creditor cannot complain of any disposition which the debtor may see fit to make of such property. Wait, Fraud. Conv. (3d Ed.) § 46.

It is contended, however,—and so the lower courts appear to have held,—that the rent which Daugherty agreed to pay for the use of the border pastures can be seized and appropriated to the payment of Perryman's debts, notwithstanding the fact that the improvements out of which the rent issued were wholly exempt from seizure and sale; in other words, it is claimed that, if an owner of an improvement on Indian lands sees fit to lease it for the purpose of deriving an income therefrom, the rent accruing under the lease is not exempt, but may be subjected to the payment of the owner's debts. This view of the law is claimed to be erroneous by learned counsel for the appellants, and we have been favored with an elaborate argument in opposition thereto, but on the present occasion we have found it unnecessary to decide the question, and would not be understood as expressing an opinion thereon. The decree of the lower court, in so far as it subjected the rent due for the border pastures to the payment of the complainant's judgment, was clearly erroneous, because it ignored the fact heretofore mentioned and found that Perryman was justly indebted to Daugherty for an amount which appears to have equaled, even if it did not exceed, the rent that was then due to Perryman on account of the border pastures. The complainant below claims these rents in right of Perryman, and any defense which would be available against Perryman if he were suing for the same is clearly available against the complainant, including the right of offset. Schuler v. Israel, 120 U. S. 511, 7 Sup. Ct. 648, 30 L. Ed. 707. While the present action is termed a "creditors' bill," it is in the nature of an equitable garnishment in so far as the rents accruing from the pastures are concerned, and, being a proceeding of that nature, Daugherty is entitled to offset against the rents which he owes whatever sum is due to himself from Perryman on the note which the latter executed on January 24, 1896, and is in part unpaid. Even if that note is amply secured by a chattel mortgage, we are not aware of any rule of law in virtue of which the holder of the note may be compelled in a proceeding of this nature to resort to the security, and foreclose it, when he has money of the maker in his hands which is adequate to discharge the obligation either in whole or in part. If he was sued for the rent by Perryman, he could doubtless use the note as an offset; and he is not disabled from so doing in a proceeding of this nature, brought by one of Perryman's creditors. In the answer that was filed by Daugherty he alleges, in substance, that an agreement then existed between himself and Perryman by virtue of which the rent to accrue for the border pastures for the season of 1898 was to be applied on the note; and we have found no evidence in the record which tends to disprove that allegation. But, even if there was evidence tending to disprove the existence of such an understanding, and if no such agreement had been made when the present action was instituted, we are aware of no ground on which Daugherty's right to offset the amount due on the note against the rent due for the use of the border pastures could be denied. Daugherty did not

forfeit his right to offset the amount due to him for borrowed money against the rents, even if he did enter into a fraudulent arrangement with Perryman for the purpose of hindering and delaying the' latter's creditors. The fraud complained of renders the chattel mortgage voidable in so far as it covered property which was subject to execution for Perryman's debts, but the alleged fraudulent arrangement did not extinguish the indebtedness evidenced by the note, or deprive Daugherty of the right to plead that indebtedness as an offset against the rents when, in a proceeding of this nature, a creditor of Perryman attempts to appropriate them to the satisfaction of his claim.

In view of the conclusions already announced, it will be apparent that the only relief which can be afforded in the case at bar is a decree annulling the mortgages of date February 15, 1894, and January 24, 1896, in so far as such mortgages convey property other than improvements on Indian lands which was and still is liable to seizure and sale for Perryman's debts. There appears to have been some property of the latter kind, which was covered by both of the mortgages,—such as cattle and some other live stock. The complainant is entitled to have the mortgages vacated and annulled in so far as they embrace property that was not exempt from execution by the terms of the statute, but he is not entitled to have them vacated in so far as they cover improvements on Indian lands which are within the exemption created by the act of congress. The decrees that were entered by the lower courts are accordingly reversed and annulled at the cost of the appellee, and the case is remanded to the United States court in the Indian Territory, Northern district, sitting at Muskogee, with directions to that court to enter a decree to the effect heretofore stated, vacating both of the mortgages in so far as they describe and convey property which is subject to seizure and sale for the debts of George B. Perryman.

If it shall so happen that the receiver who was appointed by the lower court to take charge of the property described in the aforesaid mortgages has in his hands at present any property which is subject to execution for the debts of George B. Perryman, the decree should provide that such property be sold on reasonable notice, to be prescribed by the court, and that the proceeds of the sale be applied, after the payment of all costs which may have been incurred, to the satisfaction of the complainant's judgment so far as the same will extend. If the receiver has no such property, or funds realized therefrom, in his possession, he should be required to settle his accounts, and, having done so, should be forthwith discharged, and the costs incident to the receivership should be assessed against the complainant below. In the settlement of the receiver's accounts inquiry should be made as to whether the receiver has in his hands any personal property, or money realized therefrom, which was exempt from seizure and sale for Perryman's debts; and, if so found, he should be required to account for the same, and restore it to the person or persons to whom it of right belongs. In the event that there is no property or funds in the receiver's hands on the rendition of the decree

applicable to the payment of costs, the decree should provide that each party to the action pay the costs which they have respectively incurred or created. It is so ordered.