**HAYS et al. v. HARRIS et al.***
No. 10212.

Circuit Court of Appeals, Eighth Circuit.
June 1, 1935.

Ark., and Rowell, Rowell & Dickey, of Pine Bluff, Ark., on the brief), for appellees.

Before GARDNER, WOODROUGH, and VAN VALKENBURGH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

The trustees in bankruptcy of the estate of Harris Brothers, a partnership composed of William R. Harris, John R. Harris, and C. C. Harris, formerly engaged in a general mercantile business at Hampton, Ark., in the El Dorado Division of the Western District of Arkansas, brought suit against the appellees herein to recover amounts claimed by him to be due from the Ætna Life Insurance Company upon three policies of insurance issued by said company upon the life of William L. Harris, deceased. The face of said policies aggregated $25,000. The complaint charges that said policies were issued for the benefit of the partnership; that the premiums were at all times paid from the assets of the partnership; that, on December 10, 1930, when said partnership and the individual members thereof were insolvent, when William L. Harris was in rapidly failing health, and when the members of the partnership and their wives knew that bankruptcy was impending, all of said policies were fraudulently transferred from the partnership as beneficiary to Versa Sue Harris, Nell M. Harris, and Sweet Harris, wives of the partners, as substituted beneficiaries; that said transfer was made for the purpose of defeating, hindering, and delaying the creditors of the partnership in the collection of their debts and demands. An involuntary petition in bankruptcy was filed August 3, 1931, and an adjudication was entered January 21, 1932. It is further alleged that on November 2, 1931, a further transfer was made of said insurance from the said Nell M. Harris and Sweet Harris to the defendant Versa Sue Harris. The trustees allege that by virtue of these premises said policies of insurance and all rights thereunder passed to the trustees as assets of the estate. The prayer for relief follows: "Plaintiff prays that defendant Aetna Life Insurance Company be restrained and enjoined from making any payments under the above mentioned policies of insurance to any of the defendants herein until a final hearing of this cause; and that, upon final hearing, such injunction be made permanent; that the trans-

· Edward H. Coulter, of El Dorado, Ark. (Boone T. Coulter and Coulter & Coulter, all of El Dorado, Ark., on the brief), for appellants.

C. E. Wright and J. R. Wilson, both of El Dorado, Ark. (L. B. Smead, J. Bruce Streett, and L. W. Bower, all of Camden,

fers herein complained of be declared fraudulent, and that they be cancelled, set aside and held for naught; that the beneficiaries named under said transfers be declared mere trustees for plaintiff herein; that plaintiff have and recover of and from defendants the full amounts due under the policies of insurance on the life of William L. Harris hereinabove described; and, alternatively, and alternatively only, he prays that he have and recover of and from defendants the sum of $10,265.23 as the amount of insurance which the premiums in excess of the sum of $300.00 per year paid by the partnership would have purchased; and, alternatively, and alternatively only, he prays that he have and recover of and from defendants the full amount of the premiums paid on all of said policies; and that, alternatively, and alternatively only, he have and recover of and from defendants the cash surrender value of all of said policies on August 3, 1931, the date of the filing of the petition herein. And he prays for all further and proper equitable relief."

The Ætna Life Insurance Company filed answer denying knowledge of any of the fraudulent acts charged, and coupled with it a bill of interpleader requiring the plaintiff and other defendants to interplead, and praying that the rights of the respective parties to the money by it deposited in court be adjudged. Appellee Versa Sue Harris filed separate answer praying that the bill be dismissed for want of equity; that the temporary restraining order against the insurance company be dissolved; that she have judgment in her favor, and that, in the alternative should plaintiff recover any sum, she have judgment against the insurance company in the full amount alleged to be due under a contract of July 1, 1931.

Nell M. Harris, Sweet Harris, John R. Harris, C. C. Harris, and N. N. Wood (at that time guardian for C. C. Harris, an insane person now represented by John R. Harris as guardian) filed separate answer, on their part denying the allegations of fraud contained in the bill, and setting up the interests of Nell M. Harris and Sweet Harris as against the claim of Versa Sue Harris substantially as follows: "If such transfer was made from the said Nell M. Harris and Sweet Harris to Versa Sue Harris, through the manipulation of William L. Harris, then the same was made not for the purpose of concealing the assets of the partnership but it was made for the deliberate purpose only of defrauding Nell M. Harris and Sweet Harris out of their interests in said insurance."

They asked that the prayer of the bill of complaint be denied in so far as it might affect the rights of these defendants.

July 9, 1923, the Ætna Life Insurance Company issued three policies, two for $10,000 each and one for $5,000 upon the life of William L. Harris, with the firm of Harris Brothers as beneficiary. The policies contained the following provision: "If the proof is furnished to the company that for the preceding six months the insured has been totally disabled to the extent of not having been able to perform any work or conduct any business for compensation or profit and will for life be so disabled, * * * the company will upon acceptance of such proof, if all premiums previously due have been paid, immediately pay in full settlement of this policy upon request duly executed by the life beneficiary, and assignee, if any, one-twentieth of the sum insured and will pay the same amount annually thereafter until twenty such payments in all have been made."

January 17, 1924, the beneficiary of the $5,000. policy was changed from the firm to appellee Versa Sue Harris as death beneficiary, and from the said firm to William L. Harris, the insured, as life beneficiary. Under the clause above quoted, April 26, 1930, William L. Harris made his claim for total and permanent disability allowance under the terms of this policy. December 10, 1930, upon authorized request, the Life Insurance Company changed the beneficiaries in all three policies by the following endorsements:

"Death Beneficiary:

"The net sum payable by the company under this policy by reason of the death of the insured shall be payable as follows:

"One-third (1-3) of said net sum shall be payable to Versa Sue Harris, wife of the insured, if she survives the insured, otherwise to the executors, administrators or assigns of the insured.

"One-third (1-3) of said net sum shall be payable to Nell M. Harris, wife of the insured's brother, John R. Harris, if she survives the insured, otherwise to said John R. Harris if he survives the insured, otherwise to the executors, administrators or assigns of said John R. Harris.

"The remainder (1-3) of said net sum shall be payable to Sweet Harris, sister-in-law of the insured, if she survives the insured, otherwise to the executors, administrators or assigns of said Sweet Harris. * * *

"Life beneficiary under this policy shall be changed as follows:

"Until the death of the last survivor of Versa Sue Harris, wife of the insured, Nell M. Harris, sister-in-law of the insured, and Sweet Harris, sister-in-law of the insured, the life beneficiary shall be the survivors of said Versa Sue Harris, Nell M. Harris, and Sweet Harris, jointly.

"After the death of the last survivor of said Versa Sue Harris, Nell M. Harris and Sweet Harris, the life beneficiary shall be the insured."

It is these changes of beneficiaries in the two $10,000 policies that are attacked by the trustees in bankruptcy as transfers "made and contrived with the intent to hinder, delay, and defraud creditors" of the partnership firm. September 19, 1931, the Ætna Life Insurance Company notified William L. Harris that it had decided to approve payment of insurance under the total disability provision in all three policies upon a statement over the signature of the life beneficiaries and himself designating the method of settlement desired. It called attention to the fact that its records disclosed that "the life beneficiary under all three policies is Versa Sue Harris, your wife, Nell M. Harris, wife of your brother, and Sweet Harris, your sister-in-law, said beneficiaries to share jointly." October 30, 1931, William L. Harris and Versa Sue Harris, his wife, procured appellees Nell M. Harris and Sweet Harris to join with Versa Sue Harris in requests for change of life beneficiary in the three policies from these three wives to Versa Sue Harris individually. Accordingly, on November 2, 1931, the insurance company made the following indorsement on all three policies:

"Life Beneficiary:

"The life beneficiary under this policy is hereby changed as follows:

"Until the death of Versa Sue Harris, wife of the insured, said wife shall be the life beneficiary.

"After the death of said wife, the insured shall be the life beneficiary."

December 1, 1931, William L. Harris, the insured, and Versa Sue Harris, as life beneficiary, surrendered the three policies to the insurance company, and December 10, 1931, its contract was issued providing for the payment of twenty equal installments of $1,110.12 to Versa Sue Harris. By compromise agreement this contract was dated July 1, 1931. The first two of these payments were made to Versa Sue Harris. The third and fourth were paid into the registry of the court to await its decision in this case. The trial court found that said insurance was originally taken out, and at all times thereafter was a part of the insurance taken out, upon the lives of William L. Harris and John R. Harris for the benefit of said partners individually and their families and not for the benefit of the partnership entity; that no creditor of said firm was ever advised of the existence of said policies, and that no credit was ever extended to the partnership thereon; that the premiums on all of said policies were regularly paid from year to year by the partnership, but charged back, one-third thereof to the account of each partner, until about the year 1928, and thereafter were either paid in this manner or from proceeds of loans on the policies by the insurance company. It found further that, as of July 9, 1931, the full cash and loan value of each of the $10,000 policies was $930, and that said full sum had been loaned thereon by the insurance company on August 20, 1930, and on December 10, 1930, and that, therefore, neither of said policies had any cash or loan value whatsoever. It was substantially conceded at the argument that the $5,000 policy was not involved in the charge of fraudulent transfer on December 10, 1930, preferred by appellants in the bill of complaint. Finally, upon this phase of the controversy, the court found that on December 10, 1930, the partnership firm of Harris Brothers was solvent and continued so to be until some time in the year 1931, and that the change of life and death beneficiaries on the former of these dates was not made or contrived with the intent "to hinder, delay or defraud the creditors of said firm of Harris Bros., and said change of life and death beneficiaries in said insurance policies did not cause said firm of Harris Bros. to become insolvent, and did not hinder, delay or defraud the creditors of said firm of Harris Bros."

As between the appellee Versa Sue Harris and appellees Nell M. Harris and Sweet Harris, the court found that Wil-

liam L. Harris and Versa Sue Harris, his wife, on October 30, 1931, fraudulently procured the request for change of beneficiaries to be signed without reading by all three beneficiaries designated by the endorsement of December 10, 1930, whereby the said William L. Harris and Versa Sue Harris became respectively sole insured and life beneficiary; that the said Nell M. Harris and Sweet Harris, being members of the same family group, living in a state of confidence and trust among themselves, had been fraudulently induced by the false representations of William L. Harris and Versa Sue Harris to sign the request for change of beneficiaries on October 30, 1931, thereby, in ignorance of the true facts, signing away their rights as beneficiaries under the endorsement of December 10, 1930. They did not learn the nature of these changes until after the death of William L. Harris, September 16, 1932. The court found that the Ætna Life Insurance Company acted in good faith in connection with all the transactions involving these policies of insurance, and had no information that would place it on notice that the partnership or its trustees in bankruptcy had any interest therein. It decreed that appellants' complaint be dismissed for want of equity, that the money deposited by the insurance company in the registry of the court be divided equally between appellees Versa Sue Harris, Nell M. Harris, and Sweet Harris, and that the payments accruing under the supplemental contract of December 1, 1931, likewise be paid to them in equal amounts, all in conformity with their interests as beneficiaries designated by the endorsement upon the policies of December 10, 1930, to which reference has heretofore been made. We have before us now the appeal of the trustees only.

Counsel for appellants in the brief have grouped their points relied upon under three heads:

(a) Alleged erroneous admission and exclusion of evidence.

(b) The claim of fraudulent transfer, involving the question of partnership solvency or insolvency.

(c) The question of the measure of recovery.

The first point is conceded to be important only insofar as it may affect the holding of this court on the question of fraudulent transfer; and it is frankly stated that, without waiving the point, it is not desired to urge it at length in the brief. There are four specifications cited.

1. Three witnesses for the defense were shown financial statements of the partnership covering the years 1926 to 1931, and were asked whether they were familiar with the properties therein referred to and whether the values set out were approximately correct. The witnesses answered in the affirmative. The figures in question showed a substantial excess of assets over liabilities. The witnesses had been sufficiently qualified for this purpose—a matter which is a preliminary question for the trial court. Such witnesses need not be specially skilled as experts to testify respecting the value of property. Union Trust Company v. Woodrow Mfg. Co. (C. C. A. 8) 63 F.(2d) 602. We perceive no error in the admission of this testimony.

2. A witness for the defense was permitted to testify that the insurance in suit was made payable to the partnership in order to evade the payment of inheritance taxes in the event of death of the insured. This witness was shown to be the firm's adviser on all tax matters. The testimony appears to have been offered and received as an explanation of the fact that the policies originally named the partnership as beneficiary. The objection made was that it tended to vary by parol evidence the terms of the written contracts. The competency of this testimony is at least doubtful, but the record as a whole renders its effect unsubstantial. A number of other witnesses testified to the same effect—two without objection interposed—and no error is urged on that ground. Moreover, while the premiums were paid for a period by the partnership, they were charged back to the individual partners, and the record generally furnishes substantial support to the finding of the trial court that this insurance was taken out for the benefit of the individual partners and their families and not for the benefit of the partnership entity. It was never included as a partnership asset in any financial report made by the company, and it does not appear that any creditor dealt with the firm with knowledge of or in reliance upon it.

3. Error is assigned to the exclusion of a report made by one Grant in 1931, which report, attached to his deposition, indicated that the partnership was insolvent at that date. His examination was

made of the books of the company at the instance of a creditor, and the objection made by counsel for appellees was that the deposition was taken without notice upon two of the interpleading defendants, and that the examination made failed to qualify Grant to report upon the values of the partnership assets. The report was excluded. The testimony upon the question of solvency or insolvency of the partnership on December 10, 1930, is too extended to permit of detailed analysis within the scope of this opinion. We find it to be substantial in support of the trial court's finding that the firm of Harris Brothers was solvent on the date last mentioned and "continued solvent until sometime in the year 1931."

■ 4. The defense offered in evidence several copies of financial statements sent out by the partnership for the years 1926 to 1931 inclusive, purporting to show a solvent financial condition on their dates. Appellants objected to them because it was not shown by whom the reports were made, the basis of the values fixed therein, and upon the further ground that they were of a self-serving nature. Standing alone, it would seem that such statements required supporting testimony upon the question of property values therein contained. They were, however, competent to show the condition of the partnership as held out to the public, and the absence of these policies of insurance among the stated items of assets. As has been already stated, the finding of the chancellor on this point was otherwise amply supported by the record.

■ Because of the importance of the general question presented by this assignment, we have devoted to this point a discussion perhaps beyond its significance even in the eyes of counsel for appellants. Where plain error is committed in the exclusion or admission of evidence in the trial of a case at law, it has been held that the judgment should be reversed, "unless it is clear that the error was not so prejudicial as to exclude every reasonable doubt." Inman Bros. v. Dudley & Daniels Lumber Co. (C. C. A. 6) 146 F. 449. In equity, where the entire case is submitted to the chancellor instead of to a jury, the rule is less rigid. In an equity case, even though some error may be made in the admission or rejection of evidence, if, on consideration of the whole record, the result must have been the same, the decree will not necessarily be disturbed. "Unless

an obvious error has intervened in the application of the law, or some serious mistake has been made in the consideration of the evidence," the findings of the chancellor must be taken as presumptively correct. Gorham Mfg. Co. v. Emery-Bird-Thayer Dry-Goods Co. (C. C. A. 8) 104 F. 243, 244, 245; 28 USCA § 391, p. 385; Daugherty v. Bogy (C. C. A. 8) 104 F. 938.

"In case not tried to jury, presumption is that court considered only competent evidence." Garden City Feeder Co. v. Commissioner (C. C. A. 8) 75 F.(2d) 804.

■ It is our judgment, upon the whole record that the finding of the trial court, that these policies of insurance were taken out for the benefit of the individual partners and their families and not for the partnership entity, that the partnership was solvent on December 10, 1930, when the alleged fraudulent transfer was made, and that this action was without intent to defraud or defeat creditors in the collection of their demands, is substantially supported and should not be disturbed. These conclusions, standing alone, would lead to affirmance of this decree, but the same result is reached upon other grounds.

■ The trial court found, upon evidence substantially beyond dispute, that the two $10,000 policies, on December 10, 1930, had neither cash surrender nor loan value. It must be conceded that the $5,000 policy, because of a transfer of beneficiary long prior to that date, is not in any view subject to this attack of the trustee in bankruptcy.

■ "Life insurance is property, but it is peculiar property, and Congress by the proviso in § 70a of the Bankruptcy Act [11 USCA § 110 (a)] intended that the bankrupt should have the benefit of all policies except to the extent of the actual cash value which could be realized by the trustee for the creditors. * * *

"Under § 70a life insurance policies which have no cash surrender value, or on which the company has loaned the full surrender value so that the policy has no cash surrender value remaining, do not pass to the trustee as general property but remain the property of the bankrupt who is not limited in dealing with them." Burlingham v. Crouse, 228 U. S. 459, 33 S. Ct. 564, 57 L. Ed. 920, 46 L. R. A. (N. S.) 148.

Under the facts in this case, the policies in suit did not pass as a general property to the trustees in bankruptcy. It is,

however, contended that William L. Harris, at the time this transfer was made, was in rapidly failing health, and acted in anticipation of approaching death. Navassa Guano Co. v. Cockfield et al. (C. C. A. 4) 253 F. 883, 6 A. L. R. 1168, is cited in support of the contention that this fact takes this case out of the general rule just stated. Giving to the cited case its full due under its special facts, it still falls short of ruling the situation before us. In the Cockfield Case, the insured, stricken with a fatal illness, and "realizing he was about to die within a few days," attempted to change the beneficiary in his policy. He did die a week later. The transfer in the case at bar was made December 10, 1930. William L. Harris died September 16, 1932. The record does not support the theory that the transfer was made in anticipation of approaching death.

So far as appears, the involuntary petition in bankruptcy concerned the partnership alone. Its trustees are the plaintiff-appellants herein, and relief is sought out of the alleged assets of that entity.

■ "An involuntary petition filed against a partnership, which does not in terms seek an adjudication that the partners are bankrupts, as individuals, nor allege that as individuals they are insolvent or have committed any act of bankruptcy, is not in legal effect a petition against them individually; and an adjudication thereunder of the partnership's bankruptcy is not, in legal effect, an adjudication that the partners are bankrupt individually." Liberty National Bank of Roanoke v. Bear, Trustee, 276 U. S. 215, 48 S. Ct. 252, 72 L. Ed. 536; Meek v. Centre County Banking Co., 268 U. S. 426, 45 S. Ct. 560, 69 L. Ed. 1028.

There is, then, this additional conclusive reason why this decree should be sustained.

"Partnership—Partners have right of disposition until partnership property is placed in custody of the law—Preference of partnership creditors then first attaches.

■ "Until partnership property is placed in the custody of the law by some suit or act which invokes the interposition of a court to administer it, partners, with the consent of each, have the right and the power to convert it into individual property, to apply it to the payment of individual debts in preference to the debts of the partnership, or to make any other disposition of it in good faith which does not constitute a voidable preference. Insolvency does not destroy or diminish this right of disposition." Sargent v. Blake (C. C. A. 8) 160 F. 57, 17 L. R. A. (N. S.) 1040, 15 Ann. Cas. 58.

The opinion in that case contains an exhaustive discussion of the principles applicable to the instant case in which no rights of partnership creditors had attached at the time the transfer complained of was made. The rule announced finds uniform support in controlling decisions. 47 C. J. par. 207, p. 770, and par. 428, p. 931; Case v. Beauregard, 99 U. S. 119, 25 L. Ed. 370 (in this case both the firm and its members were insolvent); Huiskamp v. Moline Wagon Co., 121 U. S. 310, 7 S. Ct. 899, 30 L. Ed. 971.

■ If one partner may, with the consent of the others, apply partnership property to the payment of his individual indebtedness as against partnership creditors who have acquired no lien on the property (Huiskamp v. Moline Wagon Co., supra), how much more may he convert, from firm into individual assets, insurance policies upon his own life and health. All this concedes for the sake of discussion that the policies were ever partnership property, which the trial court found they were not.

With the issue between Versa Sue Harris and her codefendant we are not concerned in this appeal.

From the decision of the trial court upon those issues, another appeal is pending. We have referred to them here in order to explain and clarify the decree of the trial court upon the complex issues presented by the pleadings, and unfortunately confused in this record. Nothing herein contained is intended to bear upon the merits of the controversy between Versa Sue Harris and appellees Nell M. Harris and Sweet Harris. We are agreed that the transfer to Versa Sue Harris on November 2, 1931, was not made for the purpose of hindering and delaying creditors, had no such effect, and has no bearing upon the issues presented on this appeal.

We conclude, for the reasons hereinabove assigned, that the decree below between appellants and appellees herein should be affirmed, and it is so ordered.