BEVERLY T. CRUMP and others *vs.* HENRY G. INGERSOLL and another.

July 15, 1890.

Real-Estate Agent Acting for both Vendor and Purchaser.—An agent cannot be allowed to place himself in a position where duty and interest conflict, or be permitted to make a profit out of his agency.

Same—Joint Agents—Action by Purchasers—Parties.—In an equitable action brought to cancel a contract by which three persons—A. and B. as copartners, and one C.—became agents for several other persons in the purchase and management of real property, and to recover a stated sum of money which, it was claimed, had been made and kept by the copartners in buying the property for less than the amount represented by them to the principals as the purchase price, the fact being unknown to C., *held,* that C. was a proper party plaintiff to the action.

Appeal by defendants from an order of the district court for Ramsey county, refusing a new trial after trial by *Otis,* J., and judgment ordered for plaintiffs.

*F. G. Ingersoll* and *H. P. Camden,* for appellants. *J. F. Fitzpatrick,* for respondents.

COLLINS, J. Defendants, as copartners, were engaged in the real-estate business in the city of St. Paul. The plaintiff Clay was an attorney in the same place, and acquainted with the other plaintiffs, who were residents of the state of Virginia. Defendant Ingersoll, for and in behalf of his firm, held an exclusive agency for the sale of some 400 acres of land; but of this agency none of the plaintiffs had any knowledge. Clay, upon the solicitation of the defendants, having been informed by the latter that they had the refusal of, and could

purchase, the real estate before mentioned, for the sum of $20,000, and no less, and relying upon this statement, sought out his coplaintiffs as probable purchasers of the same. At and prior to the making of the contract hereinafter referred to, between defendants and the plaintiff Clay of the first part, and all of the plaintiffs except Clay of the second part, the defendants represented to plaintiffs that they had the refusal of, and could purchase for the parties named as of the second part, the premises in question, for the sum of $20,-000; and plaintiffs entered into the contract believing and relying upon this representation.

The contract provided that the parties of the first part, defendants and Clay, should purchase for those of the second the land at and for the sum of $20,000, one-half cash, the balance upon time; the latter to furnish the cash, and to execute the notes evidencing the postponed payments. The interest of each party in the purchase and in the land was specifically stated, and certain details were provided for, of no moment in this controversy. It was further stipulated between the parties that "in consideration of the premises, and the services of said parties of the first part rendered and to be rendered, said parties of the first part shall have one-third of the net profits arising from the sale or renting of said land," and further, that "said parties of the first part shall, without charge or compensation other than said share in said net profits, have the care and management of said lands," Clay to decide, subject to the approval of a majority of the purchasers, when to dispose of the same. On the execution of the contract, defendants secured from the owners of the lands the usual agreements to sell to plaintiffs, except Clay, in which agreements the purchase price was fixed at $20,000. Thereafter the cash payment of $10,000 was made by Clay, in behalf of the purchasers, to defendants, the notes duly executed and delivered, and from the owners of the land came proper deeds of conveyance. All of the negotiations between these owners and the plaintiffs, Clay included, were conducted, carried on, and concluded by the defendants; and the latter actually paid over to the owners of the land the sum of $17,300, partly in cash and partly in the notes before mentioned, secretly keeping and appropriating the residue of the

purchase-money, the sum of $2,700. The fact was that during all of the negotiations, and in the sale, defendants had acted, under their contract of exclusive agency, as the agents of the land-owners, —of which these plaintiffs were ignorant until just before the commencement of this action,—and retained the money as commissions for selling the property, and in accordance with the terms of the agreement conferring an exclusive agency upon them. The court, trying the case without a jury, found for the plaintiffs, excluding · Clay; and, a motion for a new trial having been denied, defendants appeal.

1. Appellants contend that several of the findings are not sustained by the testimony. As to some of the minor facts heretofore stated from the findings, possibly with unnecessary detail, there was the usual conflict between witnesses; but there was sufficient testimony to warrant the conclusion of the trial court on each disputed point.

2. There is nothing in the appellants' claim that plaintiffs should have been compelled to elect between the distinct remedies demanded in the prayer of the complaint; one being for a cancellation of the contract, the other for a money judgment against defendants for the amount retained and kept by them as commissions. It is apparent that one of the plaintiffs, Clay, could not be allowed to participate in the money to be recovered, because no portion of it was paid or advanced by him. But the action was an equitable one, in which the demand was made that the contract, in which he held an interest adverse to plaintiffs, be set aside because of alleged fraud on the part of defendants, of which he claimed to be ignorant, and desired to repudiate. It was essential that he be made a party, and quite proper, as he had no part in the fraudulent acts complained of, that he be a plaintiff. Pom. Rem. §§ 247–249. And the order for judgment excluding Clay as a creditor was justified by the provisions of Gen. St. 1878, c. 66, § 264.

3. It cannot be doubted but that the relation of principal and agent was created between the parties, by the contract a part of which has been quoted. As might be expected, there had been more or less communication and negotiating with the contemplated pur-

chasers previous to the execution of the contract, all of which was conducted by Clay, the defendants taking no part, and not being known to the other parties until the contract was presented for their signatures. During this period the relations of these persons were not clearly defined; but what relations there existed between Clay and defendants, or between him and those who finally purchased,—whether he was the agent of the one or the other,—became immaterial on the making of the final agreement. The parties of the first part, three in number, then became the agents of those of the second part, who then authorized the purchase of the land, and constituted Ingersoll, Camden, and Clay their representatives for that purpose. In that contract all negotiations terminated, all former offers or propositions merged, and the *status* of those who signed it became fixed absolutely. Relying upon the representations that the property was for sale and could be purchased for a certain sum, the defendants and Clay were employed to buy it. They did so, but for a less sum, concealing the fact from their principals. It needs no citation of authorities upon the proposition that an agent cannot be allowed to place himself in a position in which duty and interest conflict, or be permitted to make a profit out of his agency, but on this subject a large number of cases have been collected in note 1, p. 372, 1 Am. & Eng. Enc. Law.

Order affirmed.