## THALLMANN et al. v. THOMAS.

(Circuit Court of Appeals, Eighth Circuit. October 14, 1901.)

### No. 1,539.

1. PUBLIC LAND—VALID LOCATION IMPOSSIBLE WHEN IN POSSESSION OF ONE HAVING SUPERIOR RIGHT.

A valid location of public land cannot be instituted while another has the possession and right of possession under an earlier lawful location.

2. SAME—VALID LOCATION BY FORCIBLE ENTRY IMPOSSIBLE.

A valid claim to public land cannot be initiated by forcible entry upon it, even while it is in the possession of one who has no right to the possession, and no lawful claim to secure the title.

3. SAME—VALID CLAIM MAY BE INSTITUTED BY PEACEABLE ADVERSE ENTRY UPON THE POSSESSION OF ANOTHER.

Every competent locator has the right to initiate a lawful claim to unappropriated public land by a peaceable adverse entry and location thereof while it is in the possession of those who have no superior right to acquire the title or to retain the possession.

4. EQUITY—MISTAKES IN PATENTS AND CONTRACTS MUST BE PROVED BEYOND REASONABLE CONTROVERSY.

Patents, contracts, and conveyances, the accredited evidences of rights and titles, may not be set aside or modified for mistakes unless those mistakes are established by evidence that is plain and convincing beyond reasonable controversy.

5. FINDINGS AND DECREE OF LOWER COURT PRESUMPTIVELY CORRECT.

Where a chancellor has considered conflicting evidence, and made his finding and decree thereon, they must be deemed to be presumptively correct in an appellate court; and unless an obvious error has intervened in the application of the law, or some serious mistake has been made in the consideration of the evidence, they will not be disturbed.

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the District of Colorado.

The Nellie lode mining claim, situated in the state of Colorado, is owned by the complainants, Ernest Thallmann and Hamilton F. Kean. It extends in a westerly direction from its eastern boundary up the side of a precipitous mountain, which has in some places a slope of 35°, for a distance of 1,368 feet, and its width is 300 feet. It was patented on July 18, 1890, and in the summer of 1898 the complainants were taking ore from it, and had driven some of their tunnels across its north line into adjoining territory that was a part of the unappropriated public domain. Their workings were many feet below the surface of the land, and they had never taken possession of this land above these underground workings. On June 28, 1898, the defendant, T. E. Thomas, peaceably entered upon and located the Thomas lode mining claim upon land adjoining the Nellie claim upon the north.

The patent to the claim of the complainants describes its north side line as extending from its northwest corner, which is corner No. 1 of the description, N., 76° and 5' E., 1,368 feet, to corner No. 2, and it describes its south side line, which is parallel to the north line, as extending from corner No. 3 "S., 76° and 5 minutes W., 1,368 feet, to corner No. 4." The complainants alleged that there was a mistake in the description of these courses; that they should have read, respectively, N., 77° and 54' E., and S., 77° and 54' W.; and they prayed for a correction of the mistake, and for an injunction against the defendant from obtaining a patent to the land which would fall within the corrected description. The northeast corner of the description in the patent is indisputably located where it was placed at the time of the original survey, while the monuments which mark the westerly corners are gone, and their original locations are in dispute. The result is that the effect of correcting the description in the patent in the manner sought by the complainants would be to swing the west end of the Nellie claim in a northeasterly direction 43 feet, and to embrace within it a triangular tract of land north of the tract described in the patent 43 feet in width at its westerly end, diminishing to a point at its easterly end. A portion of this triangle which is within the Thomas claim is the land here in controversy. It comprises only about half an acre, but within this half acre it is claimed that the apex of a valuable lode of mineral crops out, and this is the real cause of the contest. The defendant denies that there was any mistake in the patent of the Nellie claim, and the circuit court rendered a decree in his favor. 102 Fed. 935.

Charles J. Hughes, Jr. (Gerald Hughes, on the brief), for appellants.

Charles S. Thomas (Wm. H. Bryant and Harry H. Lee, on the brief), for appellee.

Before SANBORN and THAYER, Circuit Judges, and ADAMS, District Judge.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The first objection which counsel for the complainants urge to the decree below is that the defendant knew that the complainants were in possession of the half acre here in controversy when he made his entry upon it, and that in consequence of this possession and knowledge his location is void. This proposition rests upon the fact that Thomas worked in the mine of complainants for a few weeks in the winter preceding his entry in June, 1898, and that he probably suspected, if he did not know, that they had run their tunnels through and taken some ore from this tract of land north of the line of their patented claim. They had, however, never occupied the surface of this land. It appeared from their patent to be without the limits of their claim. That claim had been definitely located in 1881. It had been patented in 1890. The complainants had given no notice, brought no suit, made no motion to change its location, and the defendant made his entry and claim peaceably and without objection from any one. There was nothing in this state of facts to prevent him from initiating a perfect right to this land. A valid claim to unappropriated public land cannot be instituted while it is in possession of another who has the right to its possession under an earlier lawful location. Risch v. Wiseman (Or.) 59 Pac. 1111; Seymour v. Fisher, 16 Colo. 188, 27 Pac. 240. Nor can such a claim be initiated by forcible or fraudulent entry

upon land in possession of one who has no right either to the possession or to the title. Atherton v. Fowler, 96 U. S. 513, 516, 24 L. Ed. 732; Trenouth v. San Francisco, 100 U. S. 251, 256, 25 L. Ed. 626. But every competent locator has the right to initiate a lawful claim to unappropriated public land by a peaceable adverse entry upon it while it is in the possession of those who have no superior right to acquire the title or to hold the possession. Belk v. Meagher, 104 U. S. 279, 287, 26 L. Ed. 735; Johnson v. Towsley, 13 Wall. 72, 20 L. Ed. 485; Nevada Sierra Oil Co. v. Home Oil Co. (C. C.) 98 Fed. 673, 680. Any other rule would make the wrongful occupation of public land by a trespasser superior in right to a lawful entry of it under the acts of congress by a competent locator. There was nothing in the possession of the lode in this land by the complainants many feet below its surface, and their wrongful removal of ore from it, nor in the defendant's suspicion or knowledge of this trespass, nor in the fact, if it be a fact, that he learned of the trespass through his employment as a miner and shift boss of the complainants, to prevent him from making an honest and valid location of a mining claim upon this unappropriated portion of the public domain in accordance with the provisions of the acts of congress which offered him this privilege.

· There is but one other complaint of this decree, and that is that the court below should have found and corrected the alleged mistake in the patent. The determination of the question which this objection raises has involved the careful perusal, digest, and analysis of more than 400 printed pages of conflicting evidence. It is useless to do more here than to briefly state what is conceived to be the effect of the proofs, and the reasons which have led to the conclusion that has been reached. The real issue in the case is whether corner No. 1, the northwest corner of the description in the patent, was where that description locates it, or at a point about 43 feet northeast of its location by the patent, and this issue arises in this way: The true location of corner No. 2, the northeast corner, is known. If, therefore, one starts from that corner, reverses the first course, and runs S., 76° and 5' W., 1,368 feet, he must come to corner No. 1, according to the description in the patent. There is no call in this description which is inconsistent with this location, and in the absence of other evidence the point thus found must be held to be the true position of this corner. The patent discloses the fact, however, that the original post set at corner No. 1 bore the marks 1+1902 on one side, and 1+1901 on the opposite side; and these marks indicate that this post marked the first corner of the survey or description of the Ella lode mining claim, as well as the first corner of the Nellie claim. The Ella claim adjoined the Nellie on the west, and corners 1 and 6 of this claim were identical with corners 1 and 4 of the Nellie. In the patent to the Ella which was issued on July 18, 1890, the statement is found that "an open cut at discovery bears south, 6 degrees and 52 minutes west, 180.7 feet distant" from the post at corner No. 1. This discovery cut is found, and its identity and loca-

tion are undisputed. If one starts from this cut, reverses this course, and runs N., 6° and 52′ E., 180.7 feet, he reaches a point about 43 feet northeasterly of the position of corner No. 1, according to the patent of the Nellie. Thus the question becomes whether the location of corner No. 1 of the Nellie shall be determined by the course and distance from corner No. 2, described in the patent of that claim, or from the course and distance from the discovery cut of the Ella found in the patent of the latter claim.

Counsel for complainants invoke the conceded rules that the most certain and reliable calls prevail over the more uncertain and unreliable, the shorter distances over the longer, the more permanent monuments over the more temporary, and the established marks of the boundaries over their courses and distances; and then they contend that there must have been a mistake in the first and third courses in the patent of the Nellie, because it is more probable that a mistake would creep into these courses than that it would occur in the short course and distance from the discovery cut of the Ella to corner No. 1. In support of their contention they produced at the hearing the engineers who surveyed the Nellie and the Ella for location in 1881 and for patent in 1883, and these surveyors testified that the proper way to locate corner No. 1 was to follow the course and distance from the discovery cut found in the patent to the Ella; that they believed that the place found in this way was the original corner; that, by starting from this point and following the courses and distances in the patent of the Ella, they found a stake and stones about 9 feet north of angle 2 of that claim, and another at angle 5 thereof; that the two first ties of corner No. 1 named in the patent of the Ella locate that corner 23 feet south of the position pointed out by the tie to the discovery cut; that in their opinion there is a mistake in the courses of the side lines named in the patent of the Nellie; and that this mistake was made in calculating out the length and direction of the center line of the claim which was originally found by means of a traverse. They testify that the courses and distances in dispute and the courses and distances of the ties of corner No. 1 which appear in the patents of the Nellie and of the Ella, including that to the discovery cut of the latter, were found either by means of traverses or by triangulation and the necessary calculations, and that none of them were run upon the ground when the original surveys were made. The evidence of these witnesses was supported by the testimony of several surveyors to the effect that in their opinion the tie to the discovery cut of the Ella ought to prevail in locating corner No. 1 over the other indicia in the notes of the surveys and in the patents, because this call contained the course and distance from corner No. 1 to the nearest and the most permanent monument. On the other hand, the courses and distances that are alleged to contain the mistake were found by the original surveyors who now attack them, and were declared to be the true course of the Nellie vein in 1881, when they first surveyed the claim for that lode for location, and again in 1883, when they surveyed the claim for patent. The chief purpose of the survey

for location was to determine the direction of this vein. If that direction was not correctly determined, it might run without the side lines of the claim, and be lost to the locator. They found and declared its direction to be, and it was described in the amended location certificate of September 26, 1881, based upon their survey, to be, "333.5 feet, running N., 76 degrees 5 minutes east, from center of discovery shaft, and 1,033.5 feet, running south, 76 degrees 5 minutes west, from center of discovery shaft." In 1883 they surveyed and laid the side lines of this claim parallel to the line which they had ascribed to the vein, and gave them the same course. In the latter survey they described two tunnels among the improvements upon the Nellie, and gave their bearings and distances from corner No. 1 of their survey of that claim. These tunnels are still there, and the approximate location of their mouths in 1883 is still discernible. Three surveyors testified that the lines described by the courses and distances which the original surveyors gave these tunnels from corner No. 1 as located by the patent of the Nellie strike within about 5 feet of the original mouths of these tunnels, while, if they are run from the point where the complainants seek to locate this corner, they will strike from 40 to 100 feet further up a cliff, where there is no vein of mineral, and where there never were any tunnels. On October 4, 1887, one of the original surveyors of the Nellie made a survey of and tied corner No. 1 of the Golden Cross lode mining claim to corner No. 1 of the Nellie claim at the place where it is located by the patent, and not at the place where he now claims it was established. In 1892 the Kokomo No. 2 lode claim, and in 1896 the Star Gazer lode mining claim, were surveyed by other engineers, and tied to this corner at the place where it is located by the patent of the Nellie. A portion of the triangle which complainants now seek to include within their patent was patented to the owner of the Star Gazer claim without any objection on their part. Many other facts were established and many were disputed in the voluminous evidence taken in this case, but none of them are of sufficient importance to modify the effect of those which have been recited. How can the decree of the court below be lawfully reversed, in the light of this proof? The tie on which the complainants rely was a calculated course and distance from the corner in dispute to a hole in the ground on another claim found in the patent of that claim. In the notes of the survey of this second claim this course and distance was not a tie of this corner, nor was it any portion of the survey of the boundary of the claim, but it was a mere description of an improvement upon it, and it was imported into the patent from these notes. In the notes of the survey of the Nellie the courses and distances of its side lines constitute a part of the boundaries of that claim,—a portion of its survey,—and they were imported from these notes into the patent under which the complainants claim. The testimony is that the location of improvements upon mining claims is not made with that care and accuracy with which the boundaries of the claim are measured, marked, and noted, so that there is less probability of a mistake in the lines

which mark the boundaries than in the location of the improvements. This consideration is much strengthened by the fact that the great desideratum in the location of a lode mining claim—the chief end of its survey—is to ascertain and declare the true course of its vein, and of the side lines of the claim which inclose it, and which are generally drawn parallel to it, so that it may not escape from the locators.

Again, the location of the tunnels mentioned among the improvements upon the Nellie in the notes of its survey correspond with the location of corner No. 1 according to the courses and distances of the patent of that claim; and it is less probable that a mistake was made in locating both these tunnels, in ascertaining the course of the vein of the Nellie, and in surveying its side lines, than that there was an error in the course and distance from corner No. 1 to the discovery cut of the Ella. When all these considerations, and the facts that the location of this mining claim was made in 1877, that it was surveyed and located in 1881, that it was again surveyed for patent in 1883, that it was patented in 1890, that other claims have been located adjoining and about it in reliance upon its record location, that under one of them a patent has issued to a portion of the triangle which complainants now claim should be placed within the boundaries of their patent, and that the courses, distances, corners, and boundaries of this Nellie mining claim remained unassailed for 16 years,—when all these facts and circumstances are reviewed the conclusion becomes unavoidable that the fact that the course and distance from one of the corners of this claim to an improvement in another claim found in another patent does not correspond with the description of the side lines in this patent establishes no probability that there was an error in the courses and distances of the lines which bound it, but renders it far more probable that there was a mistake in the location of the improvement with which it is assailed. The court below rendered a decree in accordance with this conclusion, and, even if there was a mere preponderance of evidence in favor of the theory of the complainants, the result below ought not to be disturbed, in the light of this testimony, under two well-established rules of equity jurisprudence. One of these rules is that patents, contracts, and conveyances, the accredited evidences of rights and titles, may not be set aside or modified for mistakes unless these mistakes are established by evidence that is plain and convincing beyond reasonable controversy. Maxwell Land-Grant Case, 121 U. S. 325, 381, 7 Sup. Ct. 1015, 30 L. Ed. 949; U. S. v. American Bell Tel. Co., 167 U. S. 224, 251, 17 Sup. Ct. 809, 42 L. Ed. 144; Howland v. Blake, 97 U. S. 624, 626, 24 L. Ed. 1027; Insurance Co. v. Nelson, 103 U. S. 544, 549, 26 L. Ed. 436; Insurance Co. v. Henderson, 69 Fed. 762, 764, 16 C. C. A. 390, 392, 32 U. S. App. 536, 542; Railroad Co. v. Belliwith, 83 Fed. 437, 440, 28 C. C. A. 358, 361, 362, 55 U. S. App. 113, 120. Such evidences of the rights of parties bear with them a strong presumption of their correctness. They are generally prepared with deliberation, written with care, and made for the express purpose of solemnly record-

ing the established rights, titles, and interests of those whom they concern. Patents issued by the government after surveys of the land and examinations of the rights of the grantees and of the nation are buttressed by a presumption of exactness peculiarly strong. Every step in their preparation is required to be performed by disinterested officials in accordance with express provisions of statutes. They are issued by the United States to evidence the nature and the extent of its grants, and they bear its official seal. They evidence the decisions of a quasi judicial tribunal—the interior department of the government—upon the rights of all parties to the land or privileges which they describe. They are recorded in the registries of titles, and all the world relies, and has the right to rely, upon their statements of the character, and the limits of the rights of the grantees whom they name. In view of these well-known facts, no mere preponderance of evidence, no loose, uncertain, conjectural proof, ought to be permitted to strike down or change the nature or the extent of these solemn grants of the nation. Nothing should be permitted to reach that result but evidence so clear, unequivocal, and convincing that it does not leave the issue in doubt. The proof in this case lacks every element of this character. When considered in the most favorable light, it is nothing but the balancing of probabilities of mistake between the courses and distances in the survey of the boundaries of the Nellie lode mining claim, and the course and distance from one of the corners of that claim to an improvement in an adjoining claim. It is loose, uncertain, unconvincing, and conjectural, and solemn grants of the United States cannot be annulled or reformed upon evidence of this character.

The other rule to which reference has been made is that where a chancellor has considered conflicting evidence, and made his finding and decree thereon, they must be deemed to be presumptively correct; and unless an obvious error has intervened in the application of the law, or some serious mistake has been made in the consideration of the evidence, his findings should not be disturbed. Exploration Co. v. Adams, 104 Fed. 404, 408, 45 C. C. A. 185, 188; Mann v. Bank, 86 Fed. 51, 53, 29 C. C. A. 547, 549, 57 U. S. App. 634, 637; Tilghman v. Proctor, 125 U. S. 136, 8 Sup. Ct. 894, 31 L. Ed. 664; Kimberly v. Arms, 129 U. S. 512, 9 Sup. Ct. 355, 32 L. Ed. 764; Furrer v. Ferris, 145 U. S. 132, 134, 12 Sup. Ct. 821, 36 L. Ed. 649; Warren v. Burt, 58 Fed. 101, 106, 7 C. C. A. 105, 110, 12 U. S. App. 591, 600; Plow Co. v. Carson, 72 Fed. 387, 388, 18 C. C. A. 606, 607, 36 U. S. App. 448, 456; Trust Co. v. McClure, 78 Fed. 209, 210, 24 C. C. A. 64, 65, 49 U. S. App. 43, 46. The able and persuasive arguments of counsel for complainants have not convinced us that the chancellor made any mistake of fact or fell into any error of law in his disposition of this case. The patent under which the complainants held their land threw the burden of establishing the alleged mistake in it, by convincing proof, upon them in the court below, and the decision of the chancellor cast upon them the additional burden of showing his mistake in this court. They have failed to successfully bear either burden, and the decree below must be affirmed. It is so ordered.