PAULUS et al. v. M. M. BUCK MFG. CO. et al.

(Circuit Court of Appeals, Eighth Circuit. March 28, 1904.)

No. 1,968.

1. PATENT FOR INVENTION—OWNER OF UNDIVIDED INTEREST MAY GRANT LICENSE.

The owner of an undivided part of all the rights secured by a patent may, without the consent of his co-owners, grant a valid license to use the monopoly secured by the patent.

2. SAME—ASSIGNMENT—LICENSE—DEFINITION.

A patent secures the exclusive right to make, the exclusive right to use, and the exclusive right to vend the invention it protects. A grant of all these exclusive rights throughout the United States, a grant of an undivided part of all these exclusive rights, or a grant of all these exclusive rights throughout a specified part of the United States, is an assignment of an interest in the patent, by whatever name it is designated. A grant of any interest in or right under a patent less than these is a license.

3. SAME—UNRECORDED GRANT OF EXCLUSIVE RIGHTS—VALIDITY.

An unrecorded parol or written grant of all the exclusive rights under a patent is an assignment, and under section 4898, Rev. St. [U. S. Comp. St. 1901, p. 3387], it is void as against subsequent purchasers for value, without notice.

4. APPEAL—FINDINGS AND DECREE—PRESUMPTIONS.

Where a chancellor has considered conflicting evidence, and made his findings and decree thereon, they must be deemed to be presumptively correct in an appellate court; and, unless an obvious error has intervened in the application of the law, or some serious mistake has been made in the consideration of the evidence, they will not be disturbed.

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the Eastern District of Missouri.

James H. Peirce, George P. Fisher, Jr., Paul Bakewell, and Frederick R. Cornwall, for appellants.

George H. Knight, for appellees.

Before SANBORN, THAYER, and HOOK, Circuit Judges.

¶ 1. See Patents, vol. 38, Cent. Dig. § 269.

¶ 2. Power of patentee to control his invention, see note to Heaton-Peninsular B. F. Co. v. Eureka Specialty Co., 25 C. C. A. 280.

SANBORN, Circuit Judge. This is an appeal from a decree which dismissed a bill for relief from an infringement of letters patent No. 428,516, for improvements in railway drills, issued to the complainant Aaron R. Paulus on May 20, 1890. On June 14, 1890, he conveyed an undivided one-fourth of his interest in the patent to his co-complainant, William W. Ellis. The issue in this case is one of title, and not one of impinging inventions. The complainants' title, as the record discloses it, has been stated. This is the title of the defendants: On February 24, 1890, Paulus made a written agreement to sell and convey one-half of his interest under the patent to W. W. Ellis and Mrs. Mary West, the wife of Charles J. West, as soon as he should receive his patent. This agreement was not recorded. On June 14, 1890, Paulus conveyed one-fourth of his interest as patentee to Charles J. West. On June 8, 1891, West assigned this interest to Mrs. Mary West, his wife. After these assignments had been recorded, and on September 23, 1896, Mrs. West conveyed her one-fourth interest in the patent to the defendants Weaver and Emminger. On May 24, 1897, Weaver and Emminger granted a license to the defendant the M. M. Buck Manufacturing Company to manufacture and sell the railway track drills protected by the patent to Paulus. Under this title, as the record of the Patent Office disclosed it, Weaver and Emminger owned an undivided one-fourth of the monopoly secured by the patent when they issued their license to the Buck Company, and Paulus and Ellis were entitled to no relief under their bill. The owner of an undivided part of all the rights secured by a patent may, without the consent of his co-owners, grant a valid license to use the monopoly it protects. Bloomer v. McQuewan, 14 How. 539, 14 L. Ed. 532; Blackledge v. Weir & Craig Mfg. Co., 47 C. C. A. 212, 108 Fed. 71. The burden was therefore upon the complainants to show that by reason of facts which the recorded title did not disclose the defendants ought not to be permitted to use the one-fourth of the exclusive rights under the patent which they had purchased. They endeavored to bear this burden in this way: They alleged in their bill, and the defendants denied in their answer, that about the 1st of June, 1890, they and Charles J. West, the owners of the patent, formed a partnership styled the Paulus R. R. Drill Company, and orally agreed that this partnership should have all the exclusive rights secured by the patent during its term; that neither one of them should sell his interest in the patent without first offering to sell it to the other members of the firm; that, if any one of them should sell to a stranger, the purchaser should step into the shoes of the vendor, and become a member of the partnership subject to the agreement; and that Weaver and Emminger had notice of these facts before they purchased their one-fourth interest from Mrs. West. Paulus and Ellis testified to the existence of the agreement of partnership and of transfer to the partnership of the exclusive rights protected by the patent, and Charles J. West and Mary West, his wife, testified that no such grant was ever made. The defendants introduced in evidence the written agreement dated February 24, 1890, by which Paulus contracted to sell to W. W. Ellis and Mrs. West a one-half interest in the patent as soon as he obtained it, and they testified that West never owned any inter-

est in the patent; that the assignment to him dated June 14, 1890, was made by mistake, when it should have been made to Mrs. West; that Paulus knew these facts; that he made the assignment to West in the performance of the agreement of February 24, 1890; and that Mrs. West never consented to any grant or license to the partnership which could in any way prevent her from using her one-fourth of the rights secured by the patent. The evidence was conclusive that Charles J. West and his wife left Villisca, Iowa, where the drill company was organized, and where it was operating, about the year 1892; that thereafter they lived in Ohio; that there was no agreement of dissolution of the partnership; and that neither West nor his wife participated in the profits or in the losses of the firm after they left Iowa. There was a sharp conflict of testimony upon the issue whether or not Weaver, Emminger, or the Buck Manufacturing Company received notice that the interest of Mrs. West was subject to the exclusive rights of the drill company to the monopoly before they acquired their interest. There was evidence which had some tendency to show that they had notice of facts which might have led a person of ordinary prudence and diligence to discover the claims of the complainants in this regard. On the other hand, the defendants testified that they had no notice or knowledge of any such claim.

The agreement which the complainants testify that the owners of the patent made to the effect that the drill company should have and exercise all the exclusive rights secured by the patent is called by their counsel an oral license, and much is written in the brief to show that a license may be made by parol. For the purposes of this case the concession is made that parties may make a valid oral license. But the agreement to which the complainants testify evidenced no license. It was a grant of the exclusive right to make, to use, and to vend the invention throughout the United States for the full term of the patent. They testify that the agreement was that the patent should "be used and controlled by the Paulus R. R. Drill Company for the term of the patent; that neither Paulus, Ellis, nor West could use the right outside the Paulus R. R. Drill Company"; and that, if either of them sold his interest, the purchaser should hold the same relation to the drill company that the vendor had held, and should take subject to the contract. The name by which a grant of a right under a patent may be called is not material. It does not condition or affect the rules of law which govern it. The exclusive rights secured by a patent are the right to make, the right to use, and the right to vend the invention it protects. A grant, transfer, or conveyance of these exclusive rights throughout the United States, or a grant of an undivided part of these exclusive rights, or a grant of these exclusive rights throughout a specified part of the United States, is an assignment of an interest in the patent, by whatever name it may be called. A grant, transfer, or conveyance of any right or interest less than these is a license. Waterman v. Mackenzie, 138 U. S. 252, 255, 256, 11 Sup. Ct. 334, 34 L. Ed. 923; Union Switch & Signal Co. v. Johnson Railroad Signal Co., 10 C. C. A. 176, 179, 61 Fed. 940, 943; Pickhardt v. Packard (C. C.) 22 Fed. 530, 532, 23 Blatchf. 23. The agreement to which the complainants testify constituted a grant to the partnership of all the

exclusive rights secured by the patent to Paulus, and it constituted an assignment of an interest in the patent, and not a license under it. Section 4898 of the Revised Statutes [U. S. Comp. St. 1901, p. 3387] provides that "an assignment, grant or conveyance shall be void as against any subsequent purchaser or mortgagee for a valuable consideration without notice unless it is recorded in the patent office within three months from the date thereof." The defendants Weaver and Emminger were purchasers of the interest of Mrs. West for a valuable consideration after the alleged assignment to the partnership, and the oral unrecorded grant to the firm was void as against them and their licensee, the Buck Manufacturing Company, unless they had notice of its existence before they purchased from Mrs. West. Gates Iron Works v. Fraser, 153 U. S. 332, 349, 14 Sup. Ct. 883, 889, 38 L. Ed. 734.

In the last analysis, therefore, the decision of this case is conditioned by the answers to these two questions of fact: Did the owners of the patent grant the exclusive rights under it to the Paulus R. R. Drill Company in 1890? Did the defendants have such notice of this grant as would have put a man of reasonable prudence and diligence upon an inquiry which would have discovered it before they acquired their respective interests? The burden was upon the complainants to prove a state of facts that would sustain an affirmative answer to each of these questions. The evidence upon each of these issues was conflicting. This was a suit in equity. The chancellor found that one or both of these questions must be answered in the negative, for he found for the defendants. This finding placed an additional burden upon the complainants, for the presumption is that the conclusion of a chancellor upon conflicting evidence is correct, and it ought not to be disturbed unless an obvious error has intervened in the application of the law, or some serious mistake has been made in the consideration of the evidence. Thallmann v. Thomas, 49 C. C. A. 317, 323, 111 Fed. 277, 283; Exploration Co. v. Adams, 104 Fed. 404, 408, 45 C. C. A. 185, 188; Mann v. Bank, 86 Fed. 51, 53, 29 C. C. A. 547, 549; Tilghman v. Proctor, 125 U. S. 136, 8 Sup. Ct. 894, 31 L. Ed. 664; Kimberly v. Arms, 129 U. S. 512, 9 Sup. Ct. 355, 32 L. Ed. 764; Furrer v. Ferris, 145 U. S. 132, 134, 12 Sup. Ct. 821, 36 L. Ed. 649; Warren v. Burt, 58 Fed. 101, 106, 7 C. C. A. 105, 110; Plow Co. v. Carson, 72 Fed. 387, 388, 18 C. C. A. 606, 607; Trust Co. v. McClure, 78 Fed. 209, 210, 24 C. C. A. 64, 65.

No good purpose would be served by extending this opinion to recite, review, and discuss the conflicting testimony. Suffice it to say that a careful reading and analysis and a deliberate consideration of all the evidence have failed to convince that the court below fell into any error of law or mistake of fact in its consideration or decision of the questions presented in this case. The decree below is accordingly affirmed.