## RIO SECURITIES CO. v. WASSELL et al.
## PENRY et al. v. SAME.
### Civ. A. Nos. 353, 354.

District Court, S. D. Texas,
Brownsville Division.

March 5, 1946.

882

Kent, Brown & George, of Harlingen, Tex., for plaintiffs.

Carter & Stiernberg, of Harlingen, Tex., for defendants.

HANNAY, District Judge.

This is a consolidation of two suits, to-wit: Civil Action No. 353, styled Rio Securities Company v. Ruth May Wassell and Sam M. Wassell, and Civil Action No. 354, styled Joe L. Penry, Jr., et al. v. Ruth May Wassell et vir. The cases, as consolidated, were tried by the court, the jury having been waived. The pertinent facts of the case, in which the plaintiffs seek specific performance of a contract to sell land, are as follows: The plaintiffs, Joe L. Penry, Jr., and Larry J. Powers, both of whom reside and did reside at all times material hereto, at Harlingen, Texas, were the sole members and owners of two partnerships, to-wit: Penry & Powers and Rio Securities Company. Ruth May Wassell and her husband, Sam M. Wassell, are the defendants in the suits. Ruth May Wassell and her husband were both practicing attorneys, as they are now, and resided then and still reside in Little Rock, Pulaski County, Arkansas. The property in controversy, to-wit: Lots 21, 22, 23 and 24, in Block 57, of the Original Townsite of Harlingen, Cameron County, Texas, was owned by Ruth May Wassell as her separate property at all times revelant to this lawsuit.

On October 4, 1944, the firm of Penry & Powers, acting through Larry J. Powers, wrote Mrs. Ruth May Wassell an offer of $17,500 for the land in question, in which letter the plaintiffs agreed to accept a commission of $500 on the sale of said property. The general effect of this letter is to urge upon the defendant, Mrs. Wassell, the acceptance of the offer therein transmitted. In reply to this offer Mrs. Wassell wrote an undated letter, but which appears to have been air mailed in Little Rock, Arkansas, at 1 p. m. on October 10, 1944, such letter being addressed to Mr. Larry Powers of the firm of Penry & Powers. In this letter Mrs. Wassell agreed to accept $17,500 for said property and to pay a commission of $500 on such sale.

On October 12, 1944, Larry J. Powers sent a telegram to Mrs. Wassell, in Little Rock, Arkansas, which reads as follows:

"Have sold lots. Letter and contract will follow.

Larry J. Powers."

On October 13, 1944, Larry J. Powers wrote Mrs. Wassell, in which letter he enclosed a contract for the sale of the property in question, and confirmed the telegram above set out. This letter requested Mrs. Wassell to authorize the bank to pay from the escrow money of $7,500, the $500 commission, and assured Mrs. Wassell "that the transaction will be handled and brought to a successful closing *with your best interests foremost in mind.*[1] The contract for the sale of the real estate was on a printed form, and provided "that Mrs. Ruth May Wassell, joined by her husband, Sam M. Wassell, hereinafter called seller, acting through the undersigned and duly authorized agent hereby sells and agrees to convey unto Rio Securities Company, of Harlingen, Texas, hereinafter called purchaser", the four lots above described, and provides for the purchase price of $17,500, payable $7,500 in cash upon delivery of a General Warranty deed, the balance of $10,000 to be represented by one promissory vendor's lien note, payable on or before five years from its date, with interest at the rate of 5%, and payable at the rate of $2,000 per year. The contract further provided for the seller to furnish complete abstract of title, made provision for the title to be examined, and for the curing of title defects, if any. It further provided for the retention by seller of the cash deposited, as liquidated damages for breach of the contract. It further provided "that seller agrees to pay only a $500.00 commission to the undersigned." The contract was executed in triplicate on the 12th day of October, 1944, and contained this statement: "This contract subject to the acceptance of seller." The contract is signed "Penry & Powers, by (in ink) Larry J. Powers", and in the lower left side is "Accepted, Ruth May Wassell—Sam Wassell, Seller." Below the sellers' signatures is "Rio Securities Company, by (in ink) Lorimer J. Brown, Purchaser." Below these

[1] Italics supplied.

signatures is this statement: "Purchaser has deposited with Penry & Powers $2,500.00 cash deposit as part payment, receipt of which is hereby acknowledged. Penry & Powers, by Larry J. Powers."

On October 18, 1944, Mrs. Ruth May Wassell wrote Larry J. Powers and sent him the abstracts of title to the property, and enclosed the contract of sale, executed in duplicate, and stated that she had retained the triplicate copy of same.

On October 21, 1944, Larry J. Powers wrote Mrs. Ruth May Wassell, acknowledging receipt of the contract, and stated that "We have today placed the original contract in the First National Bank, along with a deposit of $7,500.00." He also acknowledged receipt of the abstracts, and assured Mrs. Wassell that "We will put forth *our best efforts* to bring the deal to an early and successful closing."

On November 7, 1944, Larry J. Powers, writing for Penry & Powers, wrote Mrs. Ruth May Wassell and enclosed the opinion rendered by "the purchaser's attorney, in connection with the sale of the four lots in Block 57, setting out certain defects in the title, which must be corrected in order to eliminate the objections that have been set out." In this letter a discussion is entered into, from which it would appear that "purchaser's attorney, lessee's attorney, and our own attorney," were three separate persons. The gist of the letter is that the purchaser, Mr. Brown, had agreed to accept this title provided the seller would allow $100 for legal services in clearing up the objections set forth. The letter set out the various taxes due, the commission due to Penry & Powers, and the $100 mentioned above. This letter also assured seller that "We shall do our best to bring the deal to an early and successful conclusion *with your best interest foremost in mind*." A memorandum of title, setting forth some seventeen defects, was enclosed in said letter, and on the lower left-hand corner of said memorandum of title was shown: "Prepared in the offices of Tom M. George, Esq. 11-4-44."

On November 9, 1944, at 2 p. m. Mrs. Ruth May Wassell sent to Penry & Powers, at Harlingen, Texas, a telegram, as follows: "Contract submitted in your letter of November 7th does not conform to your original proposition of October 12th as to parties or terms or payment and deal is off. Please return abstracts. Ruth Mae Wassell."

On November 9, 1944, a night letter telegram was sent from Harlingen, Texas, by Rio Securities Company to Mrs. Ruth May Wassell, 629 West 14th Street, Little Rock, Arkansas, as follows: "Regret you apparently misinterpreted Mr. Powers letter November Seventh. Rio Securities Company standing on contract of October Twelfth and ready to close as per contract. Please advise your wishes on title requirement. Rio Securities Company."

On November 11, 1944, Mrs. Ruth May Wassell wrote Larry J. Powers, at Harlingen, Texas, in which letter she referred to her telegram of the previous day, and stated: "Your submission of an entirely different proposal amounts to a rejection of the original agreement and there is, therefore, no contract. I decline the later proposal, and wish to notify you that I am treating the matter as ended, for lack of agreement resulting in a contract." In said letter she asked for the return of the abstracts.

On November 13, 1944, in a letter signed "Penry & Powers, by Larry J. Powers," said Larry J. Powers wrote Mrs. Ruth May Wassell, acknowledging receipt of her letter of November 11, 1944, and stating, "There is no objection, of course, to the property being deeded to the Rio Securities Company," and informed Mrs. Wassell that the contract had been placed of record, and suggested that the deal be closed as per contract of October 12, 1944.

On November 27, 1944, Larry J. Powers again wrote to Mrs. Ruth May Wassell, as follows: "I would appreciate a reply from you to my letter of November 13th."

On December 16, 1944, the First National Bank, of Harlingen, Texas, wrote Mrs. Wassell, notifying her that the $7,500 had been placed in the bank, together with the five duly executed vendor's lien notes. In this letter was enclosed a General Warranty deed, to be executed by Ruth May Wassell and husband, Sam M. Wassell.

On December 20, 1944, Mrs. Wassell wrote the First National Bank of Harlingen, Texas, in which letter she explained that the deed sent her on November 7th called for the entire consideration in cash and the buyer was shown, not as the Rio Securities Company, but Lorimer Brown. She also mentions her telegram of November 9th and her letter of November 11th, such letter of December 20th concluding: "More than a month after my rejection, and after I have made a lease of

884

the premises for one year, the real estate company is now receding from its second proposal and tendering performance of its original offer. With the changed conditions I am not in a position to accept the original offer. I am again requesting return of my abstract. Mrs. Ruth May Wassell."

Thereafter, these suits were brought. They were consolidated and tried in Brownsville, Texas, in December, 1945.

In addition to the stipulation and exhibits, and the exhibits above referred to, I find as a fact that Lorimer J. Brown was the attorney for both Rio Securities Company and Penry & Powers, and that he was such attorney at all times material hereto, and that Tom M. George was, and still is a law partner of Lorimer J. Brown. I further find that there was no disclosure on the part of either Joe L. Penry, Jr., Larry J. Powers, Lorimer J. Brown, or any one else, of the relationship existing between the two partnerships; and that neither Mrs. Wassell or Mr. Wassell was informed that Mr. Brown was the attorney for both of said parties. I further find that the $2,500 recited payment in the earnest contract, was not in fact paid to the firm of Penry & Powers, nor was such sum segregated in any manner so as to identify it as the $2,500 mentioned in said receipt. I further find that the attempted purchase of the lots in question was attempted to be made by either Penry & Powers individually becoming interested as sole purchasers, or at least being interested in the purchase as stockholders and officers in a corporation to be thereafter formed.

From the above and foregoing facts, it is clear that Penry & Powers each had a financial interest in the purchase of said property; that there was a fiduciary relationship existing between Mrs. Ruth May Wassell and the plaintiffs herein; that under the facts disclosed by this record, this case comes clearly within the proposition of law which has been the settled law of this State for many years, to-wit: "Where the agent becomes personally interested in an agency transaction, it is a breach of his duty towards his principal, and the transaction is thereby rendered voidable at the instance of the principal unless it affirmatively is shown that the one seeking to enforce the transaction had full knowledge of all the material facts and of the interest of the agent and, having such knowledge, approved of or acquiesced in the transaction." See 2 Tex. Jur., page 595, Sec. 182.

No pleadings assert, and no attempt was made to show any knowledge or consent on the part of defendants to Penry & Powers, or either of them, or of the Rio Securities Company, becoming the purchaser of the property in controversy.

In 1845, in the case of Shannon v. Marmaduke, 14 Tex. 217, 218, Judge Wheeler wrote as follows: "It is the well settled general rule, that a person cannot act as agent for another and become himself the buyer. 'He cannot be both buyer and seller, at the same time, or connect his own interest in his dealings as an agent or trustee for another. It is incompatible with the fiduciary relation. * * * The rule is founded on the danger of imposition and the presumption of the existence of fraud, inaccessible to the eye of the Court. The policy of the rule is to shut the door against temptation, and which, in the cases in which such a relationship exists, is deemed to be, of itself, sufficient to create the disqualification.' " This rule has been uniformly adhered to in the State Courts of Texas since that early date.

A particularly well-reasoned case is that of Hahl v. Kellogg, 42 Tex.Civ.App. 636, 94 S.W. 389, 390, in which case the successful litigant was represented by the firm of attorneys whose junior partner was present Circuit Judge Jos. C. Hutcheson, Jr. The language of the court in that case on the point here under discussion is as follows: "It is hardly necessary to state the law applicable to the facts disclosed by this record. It has long been known and recognized by mankind throughout all the ages. It is written in the Ten Commandments, on the Twelve Tables, in the laws of every nation, and in the heart of every man. Nor is it necessary to state that the relation of principal and agent is fiduciary, requiring the most perfect loyalty and the utmost good faith, the strictest integrity, and the fairest dealing on the part of the agent to his principal. Perry on Trusts, § 206; Bigel. on Fraud, 295; Kerr on Fraud, 152, 182; Whart.Ag. 244, 245; Mech.Ag. §§ 465, 469, 470, 643."

To the same effect is the case decided by the Supreme Court of Texas in 1907, entitled Nabours et al. v. McCord et al., 100 Tex. 456, 100 S.W. 1152, wherein it was held that irrespective of the price of the property, or whether the purchase was made in good faith or not, the rule still ob-

tained that the transaction was voidable at the option of the seller who had not been fully informed as to the material facts.

Let us now consider cases in the United States Courts with regard to this proposition of law. In the case of Russell v. Republic Production Co., 5 Cir., 112 F.2d 663, by the Fifth Circuit, the Court unconditionally approved of this holding of the Texas Courts. On January 12, 1946, Judge Waller, speaking for the Fifth Circuit, rendered an opinion in the case of Barnsdall et al. v. Willis et al., 5 Cir., 152 F.2d 824, rehearing denied on February 20, 1946, 5 Cir., 153 F.2d 784, in which opinion the Court unequivocably held that the principles of law above enumerated were sound and salutary. He cites with approval the case of Kilbourn v. Sunderland, 130 U.S. 505, at page 517, 9 S.Ct. 594, 32 L.Ed. 1005. Circuit Judge Sanborn, writing in McKinley v. Williams, 8 Cir., 74 F. 94, 95, has this to say: "The law guards the fiduciary relations with jealous care. It seeks to prevent the possibility of a conflict between the duty and the personal interest of a trustee. It demands that the agent shall work with an eye single to the interest of his principal. It prohibits him from receiving any compensation but his commission, and forbids him from acting adversely to the principal, either for himself or for others. It visits such a breach of duty, not only with the loss of the profits he gains, but with the loss of the compensation which the faithful discharge of duty would have earned." Citing Warren v. Burt, 8 Cir., 58 F. 101, 103, 7 C.C.A. 105, 107, 12 U.S.App. 591, 595; Gunn v. Black's Adm'x, 8 Cir., 60 F. 151, 156, 8 C.C.A. 534, 539, 19 U.S.App. 477, 485, Michoud v. Girod, 4 How. 503, 554, 555, 11 L.Ed. 1076; Crump v. Ingersoll, 44 Minn. 84, 46 N.W. 141; Hegenmyer v. Marks, 37 Minn. 6, 32 N.W. 785, 5 Am.St.Rep. 808; Jacobus v. Munn, 37 N.J.Eq. 48, 53; Moore v. Zabriskie, 18 N.J.Eq. 51; Perry, Trusts, Sec. 919.

Applying the long-settled, well-founded principles of law discussed and quoted above to the indisputable facts revealed by the record in this case, the conclusion is clear and inescapable that the transaction in question was subject to cancellation by Mrs. Wassell at the time and in the manner that she did decline to go forward with the contract of sale of the lots; that good morals and sound public policy support her decision.

There are several other propositions of law raised by the defendants as justification of their position. However, in view of the above-mentioned facts being beyond dispute, and the law applicable thereto being perfectly plain and decisive, it is not deemed necessary to write further than to announce the inevitable decision.

It is, therefore, my opinion that the plaintiffs should not recover in this case, but that the defendants should, and that all costs of these suits should be and are hereby adjudged against the plaintiffs herein.

Let decree be drawn consistent with this opinion.

The clerk will notify counsel.

