### NYE TOOL & MACHINE WORKS v. CROWN DIE & TOOL CO.*

(Circuit Court of Appeals, Seventh Circuit. June 24, 1921. Rehearing Denied October 27, 1921.)

No. 2942.

**1. Patents ☞182—Natural and statutory right of inventor are separate and independent.**

The common-law right of an inventor to the exclusive benefit of his invention so long as he can keep it secret from competitors, and his statutory right under the patent laws to exclude others from its use for a limited term in return for the full disclosure of his invention to the public, are separate and independent rights.

**2. Patents ☞193—Right of action against single infringer assignable.**

Under Rev. St. § 4898 (Comp. St. § 9444), the owner of a patent may assign its right of action against a single infringer with the right to restrain future infringement and to recover damages for past infringement.

**3. Patents ☞280—Damages for infringement recoverable in suit in equity for injunction.**

Under an assignment by the owner of a patent of all rights of action against an infringer, at law or in equity, a court of equity in a suit by the assignee to restrain future infringement may award damages for past infringement since the assignment; but damages which accrued in favor of the assignor prior to the assignment are recoverable only in an action at law.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit in equity by the Nye Tool & Machine Works against the Crown Die & Tool Company. Decree for defendant, and complainant appeals. Reversed.

For opinion below, see 270 Fed. 587.

This is an appeal from a decree dismissing on appellee's motion appellant's bill for alleged infringement of patent No. 1,033,142, July 23, 1912, to Reed Manufacturing Company, assignee of the inventors Wright and Howard, for a machine for forming screw thread-cutting devices.

In the bill, commendable for its brevity and directness, appellant alleged: (1) That Wright and Howard made the invention and filed their application, on which the patent was issued to Reed Manufacturing Company; (2) that Reed Manufacturing Company, owner of the patent, "prior to the beginning of this suit," by a duly executed assignment in writing (attached to the bill as "Exhibit A"), transferred to appellant the right to exclude appellee from practicing the invention and the right to recover all claims in law or in equity arising out of appellee's infringement of the patent; (3) that the devices of the patent, made by Reed Manufacturing Company and by appellant, have been duly marked "Patented, July 23, 1912"; (4) that appellee has infringed the patent within the six years last past by making, using, and selling devices containing the inventions claimed therein,

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

*Certiorari granted 256 U. S. ——, 42 Sup. Ct. 185, 66 L. Ed. ——.

that appellee had been notified of the infringement, and that the infringement has damaged appellant and profited appellee; and prayed for an injunction and an accounting of appellee's profits and appellant's damages.

Exhibit A is as follows:

"Whereas, Reed Manufacturing Company, a corporation of Pennsylvania, is the owner of letters patent of the United States, No. 1,033,142, for a machine for forming screw thread-cutting devices granted July 23, 1912, on an application of Wright and Howard; and

"Whereas, under said patent said Reed Manufacturing Company has the right to exclude others from manufacturing, using and selling the devices of said patent; and

"Whereas, it is believed by the parties that Crown Die & Tool Company, a corporation of Illinois, has been manufacturing and using devices an infringement of said patent; and

"Whereas, Nye Tool & Machine Works is engaged in the manufacture of dies with which the dies made by said Crown Die & Tool Company, by the use of said infringing machine, are in competition; and

"Whereas, Nye Tool & Machine Works is desirous of acquiring from Reed Manufacturing Company all of its rights of exclusion under said patent, so far as the same may be exercised against the Crown Die & Tool Company together with all rights of the Reed Manufacturing Company against the Crown Die & Tool Company arising out of the infringement aforesaid:

"Now, therefore, in consideration of one thousand dollars ($1,000.00), and other good and valuable considerations, the receipt of which is hereby acknowledged, the Reed Manufacturing Company hereby assigns and sets over to the Nye Tool & Machine Works all claims recoverable in law or in equity, whether for damages, profits, savings, or any other kind or description, which the Reed Manufacturing Company has against the Crown Die & Tool Company arising out of the infringement by the Crown Die & Tool Company of the Wright & Hubbard patent No. 1,033,142; and, for the same consideration, assigns and sets over all the rights which it now has arising from said patent of excluding the Crown Die & Tool Company from the practice of the invention of said patent, the intention being that, in so far as concerns the exclusion of the Crown Die & Tool Company under said patent, the Nye Tool & Machine Works shall be vested with as full rights in the premises as the Reed Manufacturing Company would have had had this assignment not been made; and that the Nye Tool & Machine Works shall have the full right to bring suit on said patent, either at law or in equity against said Crown Die & Tool Company, and for own benefit, to exclude the Crown Die & Tool Company from practicing the invention of said patent, and for its own use and benefit to collect damages which may arise by reason of the future infringement of said patent by the Crown Die & Tool Company, but nothing herein contained shall in any way affect or alter the rights of the Reed Manufacturing Company against other than the Crown Die & Tool Company; and, for the same consideration, all rights as are herein given against the Crown Die & Tool Company are given as against any successor or assignee of the business thereof."

Appellee's motion to dismiss the bill for want of equity apparent on its face, in addition to challenging appellant's title and right to sue, suggests laches, conspiracy, and pendency of a prior suit, and also denies jurisdiction in equity over damages "recoverable at law."

Russel Wiles, of Chicago, Ill., for appellant.
Florence King, of Chicago, Ill., for appellee.

Before BAKER, EVANS, and PAGE, Circuit Judges.

BAKER, Circuit Judge (after stating the facts as above). Nothing of laches, conspiracy, or pendency of a prior suit is stated in the bill. If such matters exist, they must be brought into the record by appellee's answer. In the statement of the case we have synopsized the bill

in order to show that a good cause of action in equity is pleaded unless there is a lack in appellant's right to sue or in the trial court's equitable jurisdiction.

[1] An inventor is not compelled by law to apply for and take out a patent. If he has produced a new composition of matter of such a nature that the ingredients and the process are safe from discovery by others either by observing his use of his invention or by independent investigation and experiment, he would have a much more enduring monopoly by refusing to make the "full disclosure" that our patent statute invites. Such is his natural or common-law right. It is only when he fears discovery and resultant injury from the exercise by others of their natural or common-law right to copy his unpatented invention that he seeks the patent solicitor. So it is clear to a demonstration that the natural or common-law right and the statutory right are separate and independent. Neither impinges upon the other. Whether an inventor exercises or refuses to exercise his natural or common-law right has nothing to do with his assertion of his statutory right, which consists exclusively of his power, through the courts, to restrain others from practicing his invention and to call them to account for having done so in defiance of his monopoly. This view of our patent system is not a present invention, for long ago it was fully disclosed and distinctly claimed in open letters to the public. Bloomer v. McQuewan, 14 How. 539, 14 L. Ed. 532; Patterson v. Kentucky, 97 U. S. 501, 24 L. Ed. 1115; Fuller v. Berger, 120 Fed. 274, 56 C. C. A. 588, 65 L. R. A. 381; Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U. S. 405, 28 Sup. Ct. 748, 52 L. Ed. 1122.

Appellee's argument that a monopoly of this character is contrary to public policy is somewhat belated in view of the Constitution and acts of Congress.

[2] Congress, having full constitutional power over the subject, could have provided that a patent should be nonassignable, or, if assignable, that it should be assigned only as an entirety. But section 4898, R. S. (Comp. St. § 9444), says that "any patent, or any interest therein, shall be assignable in law by an instrument in writing." It would be hard to find broader or clearer words than "any interest therein" with which to clothe the owner of a patent with the right to subdivide and deed or lease his property as he pleased.

As "the right to exclude" is the only property involved, and as that property is made divisible and assignable at the will of the owner, and as the owner had duly assigned to appellant the whole of the right to exclude appellee, it is difficult to understand why appellee should feel concerned about appellant's lack of right to exclude strangers to this suit. If appellant had the right to exclude all the strangers in the world, appellee might as well contend that appellant, having good and complete title to the patentee's right to exclude appellee, should not be permitted to enforce the right because appellant was ignoring all other trespassers and was picking out appellee alone.

[3] Jurisdiction in equity to enjoin trespasses upon property is unquestionable. When that equitable jurisdiction is invoked, the chancellor will hear and determine in the same suit the matter of damages

that accrued from the trespasses during the plaintiff's ownership of the property and within the period of limitations. If such damages alone were sought, the action would be at law; but because such damages grew out of the ownership that is to be vindicated by the injunction, the demand therefor, although legal in its nature, is treated as a proper appendage of the bill in equity. Appellant's bill alleges that it acquired ownership of the right to exclude appellee "prior to the beginning of this suit," but without stating the date either in the body of the bill or in the exhibit. Appellee's alleged infringement covered six years prior to the filing of the bill. Some of that period may antedate appellant's ownership. Reed Manufacturing Company included in its assignment of an interest in the patent to appellant an assignment of its claims for damages during its exclusive ownership. Damages that are incidental to appellant's ownership are properly included in the bill. But if appellant desires to recover on the assignment of Reed Manufacturing Company's right of action at law for the damages suffered by that company, it should proceed at law upon that separate legal cause of action.

The decree is reversed for further proceedings in consonance with this opinion.