supported by facts sufficient to justify any further discussion.

*Judgment affirmed.*

SAYRE, P. J., and MAUCK, J., concur.

JOHNSON *v.* THE UPRITE MFG. CO., LTD.

(Decided July 5, 1927.)

*Messrs. Slattery & Dunlap,* for plaintiff in error.
*Messrs. Dempsey & Dempsey* for defendant in error.

CUSHING, J. Edward Johnson owned a number of patents, covering braces and suspensories. He and Mary M. Johnson conducted a business under

the name of the Uprite Manufacturing Company. In March, 1916, a corporation was formed under the name of the Uprite Manufacturing Company, for the purpose of manufacturing and dealing in surgical appliances, webbing, elastic material, and all devices to be worn for the care and protection of the body, or any part thereof. On March 14, 1916, Edward Johnson and the Uprite Manufacturing Company signed an agreement, of which the following is a copy:

"March 14, 1916.

"In consideration of the purchase by the Uprite Manufacturing Co. of the business of the partnership doing business under the name of Uprite Manufacturing Co. Edward Johnson, one of the partners of said business, hereby grants to said the Uprite Manufacturing Company the sole and exclusive license to manufacture, sell and use, devices made according to any and all letters patent which he now owns or may hereafter obtain, wherever such devices come within the scope of the business of said Company as stated in their articles of incorporation.

"Provided, however, that if the Uprite Manufacturing Company upon due notice in writing to each of the stockholders decide that they shall not prosecute any infringer of said patents, at a meeting of such stockholders called for that purpose, then said Johnson shall have the right to prosecute such infringers at his own cost and retain all moneys obtained by way of settlement or damages in said suits, and the said Company will sign all papers necessary to enable said Johnson to prosecute said suits. Edward Johnson. The Uprite Manufacturing Com-

pany, by Edward Johnson, Pres.; Elizabeth La Fetra, Secy.''

Edward Johnson died in 1918, leaving surviving him his widow, Mary M. Johnson, and Pauline Johnson Fischer, his foster child. Some time subsequent thereto, the Uprite Manufacturing Company became involved. A receiver was appointed, who sold all the property of the corporation to Joseph Nienaver. He then transferred the property so purchased to the Uprite Manufacturing Company, a limited partnership. That company prosecuted an action in the court of common pleas praying that the title to all the patents issued to said Johnson, which are germane to the plaintiff's business, and its right to make, sell, and use all devices and appliances, and instruments covered by said patents, be established, that the claims of the defendant and all and each of them antagonistic to said title and right of the plaintiff be declared to be a cloud upon such title and right, that the defendants and each of them be forever barred and enjoined from the further assertion of their said antagonistic claims, and asked for damages in the sum of ten thousand dollars, and for such other and further relief as the plaintiff may be entitled to under the facts and the law of this case.

Mary Johnson answered that in 1917 Edward Johson by written instrument transferred to her his property of every character whatsoever; that said Edward Johnson never, at any time, transferred to the corporation, the Uprite Manufacturing Company, the said patents; that she never transferred said patents to said corporation; and that said patents are her property.

Judgment was entered by the trial court for

plaintiff below, and this action is prosecuted to reverse that judgment.

The only question in the case is whether or not the instrument of March 14, 1916, was an assignment of the patent or a license to use it.

The defendant in error claims that it was an assignment. The plaintiff in error contends that it was a license.

There was no assignment as provided by the statutes of the United States (Title 35, Section 47, U. S. Code), as the instrument was not acknowledged, nor was it recorded, as required by the statute.

We are not unmindful of the holding of the Supreme Court of the United States and of the Circuit Court of Appeals of the United States, to the effect that a grant, transfer, or conveyance of the exclusive right to make, use, and vend articles patented, if this exclusive right extends throughout the United States, in law is an assignment of the patent, by whatever name it is called. *Paulus* v. *M. M. Buck Mfg. Co.,* 129 F., 594, 64 C. C. A., 162; *Waterman* v. *Mackenzie,* 138 U. S., 252, 11 S. Ct., 334, 34 L. Ed., 923; *Independent Wireless Telephone Co.* v. *Radio Corporation of America,* 269 U. S., 459, 46 S. Ct., 166, 70 L. Ed., 357.

The language of the first paragraph of the instrument in question is plain and unambiguous. The grant is of the sole and exclusive license to manufacture, sell, and use devices made according to any and all patents, etc. There is no language intimating that there was to be a sale or an assignment of the patent. The devices manufactured under the terms of this instrument must be made according to the patent, which the grantor owns or may hereafter

obtain. This language is inconsistent with the idea that there was to be an assignment, or a sale of the patent. The use was limited to the corporation. It was not made to the company and its successors or assigns. So that the company named would only have the right to manufacture, sell, and use the devices. It follows that if it ceased business, all rights under the instrument would terminate.

The intention gathered from the language might be stated thus: So long as the Uprite Manufacturing Company, a corporation, continues in business, it shall have a right to manufacture, sell, and use devices made, according to the letters patent, but only such devices as come within the scope of the business of said company, as stated in its articles of incorporation.

The language of the second paragraph of the instrument is not clear. It provides that, if, upon due notice, in writing, to each of the stockholders, they shall decide that they shall not prosecute any infringers of said patents, Johnson shall have the right to prosecute the infringers at his own cost and retain all moneys obtained by way of settlement or damages, and the company will sign all papers necessary to enable Johnson to prosecute said suit.

Title 35, Section 47, U. S. Code, provides that any patent or any interest therein shall be assignable at law by an instrument in writing.

In *Nye Tool & Machine Works* v. *Crown Die & Tool Co.*, 276 F., 376, the Circuit Court of Appeals of the United States held that the owner of a patent, under the statute, could assign a right of action against a single infringer, with the right to restrain

future infringement, and to cover damages for past infringements.

The writing under consideration grants a license to the corporation, and by the second paragraph gives the licensee the right to prosecute any and all infringers. The right to prosecute infringers cannot be construed to change the license to manufacture, sell, and vend the devices under the patents into an assignment of the patents. We concede that a licensee has no authority to prosecute infringers in his own name. But, under the statute, the owner of the patent could assign any interest therein. This right to assign an interest would include the right to assign and authorize the licensee to prosecute infringers. It is an assignment of an interest in the patent, and not of the patent itself. To construe the writing to be an assignment would be to transfer the property right to the patent, and such construction would give the corporation the right to dispose of the same to its successors and assigns. There is no language authorizing such a construction. We are not unmindful of the cases that hold that the name of the instrument does not determine its character, and we are in accord with the other class of decided cases that hold that any instrument that secures to another anything less than the exclusive right to make, use, and vend the invention it protects is not an assignment, but a license.

The licensee under this instrument having ceased to manufacture, sell, and use the devices covered by the patents in question, it should be held that its rights thereto ceased when it failed or quit doing business, as provided in the instrument, and that the

title to the patents remained in Edward Johnson, his heirs, or personal representatives.

The judgment of the court below will be reversed and the cause remanded, with instructions to enter judgment for the plaintiff in error.

*Judgment reversed.*

HAMILTON, P. J., concurs.